[No. B220034. Second Dist., Div. Three. July 27, 2010.]

GREAT LAKES CONSTRUCTION, INC., et al., Plaintiff, Cross-defendants and Respondents, v.
JIM BURMAN et al., Defendants, Cross-complainants and Appellants;
TED KIPERS, Cross-complainant, Cross-defendant and Appellant;
THE DRAFTSMAN PLANNING AND DESIGN et al., Cross-defendants and Respondents.

---

COUNSEL

Graham & Associates and Bruce N. Graham for Defendants, Cross-complainants and Appellants and for Cross-complainant, Cross-defendant and Appellant.

Law Offices of Harvey Stern and Harvey I. Stern for Plaintiffs, Cross-defendants and Respondents.

Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor, David M. Cohen and Susan A. Swingle for Cross-defendants and Respondents.

---

OPINION

**ALDRICH, J.—**

## INTRODUCTION

Attorneys who jointly represent clients in the same action owe a duty of undivided loyalty to each of their clients and are subject to disqualification if an unwaivable conflict exists arising from the joint representation. We address whether a nonclient may enforce this duty of loyalty and move to disqualify opposing counsel. In this case, the parties seeking disqualification were not present clients, former clients, or prospective clients, and they had no prior confidential relationship with opposing counsel. They moved to disqualify

opposing counsel Graham & Associates, and Bruce N. Graham, a member of the firm (Graham), from jointly representing their adversaries, appellants Jim and Maartje Burman (the Burmans) and Ted Kipers. The moving parties acknowledge that their motion is not based upon California law, but rather on what they refer to as a minority view in *Colyer v. Smith* (C.D.Cal. 1999) 50 F.Supp.2d 966, permitting a nonclient to move to disqualify opposing counsel. While the decision of a federal district court is not binding on this court, we do not read *Colyer's* minority rule as dispensing with the standing requirements. Here, the nonclient, moving parties have no legally cognizable interest in Graham's undivided loyalty to his clients. Therefore, the moving parties lacked standing to bring this motion to disqualify. We reverse the disqualification order.

## FACTUAL AND PROCEDURAL BACKGROUND

This is a contractor-homeowner dispute that began on the Internet when homeowner Maartje Burman posted comments criticizing Great Lakes Construction, Inc. She later retracted her comments but redirected her Internet criticism to Hampton Builders, Inc., the contractor hired to remodel the Burmans' residence. The dispute moved from the Internet to the courts and expanded to several parties directly and indirectly involved in the Burmans' remodeling project.

### 1. *Background Giving Rise to the Disqualification Motion*

The Burmans hired The Draftsman Planning and Design, Mike Trifunovich, and Scott Christiansen to prepare drawings and engineering specifications for their remodeling project. Based upon these prepared plans, the Burmans hired Hampton Builders. Hampton Builders hired Kipers as a subcontractor. Kipers's subcontract contains an indemnification provision, which is the basis of the disqualifying motion.[1]

#### a. *The Complaint*

Hampton Builders and Great Lakes filed suit against the Burmans, alleging libel in connection with Maartje Burman's Internet postings; breach of contract for the balance due under the contract; and on common counts to recover for Hampton Builders's services on the remodeling project.

#### b. *The Burmans' and Kipers's Cross-complaint*

The Burmans filed a cross-complaint against Great Lakes, as the alter ego of Hampton Builders, Hampton Builders, Mike Ross, Faramarz Moshfegh,

---

[1] Our resolution of this appeal does not require us to interpret the indemnification provision or address whether it is enforceable. (See Civ. Code, §§ 2772, 2778; *Crawford v. Weather Shield Mfg., Inc.* (2008) 44 Cal.4th 541, 551–553 [79 Cal.Rptr.3d 721, 187 P.3d 424].)

and Harvey Stern. The Burmans alleged that Hampton Builders failed to perform the terms of the contract, abandoned the project, and failed to pay Kipers who placed a lien on the project and stopped work. The Burmans further alleged that the project was plagued with numerous building code violations arising from the design and substandard workmanship. The Burmans asserted causes of action against Hampton Builders and Great Lakes for breach of contract, negligence, and fraud. They also sought to rescind the contract with Hampton Builders.

The Burmans asserted causes of action for breach of contract and negligence against The Draftsman Planning and Design, Alisha Spears, Mike Trifunovich, and Scott Christiansen, based upon the allegedly defective plans.

Kipers asserted causes of action in the cross-complaint against Hampton Builders for breach of an oral contract, and against both Hampton Builders and Great Lakes for common counts. He did not bring a contract cause of action.

### c. *Hampton Builders's Cross-complaint*

Hampton Builders then filed a cross-complaint against Kipers, alleging breach of contract, interference with contract, express contractual indemnity, equitable indemnity, and declaratory relief. Hampton Builders alleged that pursuant to the subcontract, Kipers agreed to supervise the project, obtain all permits, schedule and be present for inspections, and guarantee all subcontractor work, labor, and materials for a period of one year from the date of completion.

Hampton Builders's express contractual indemnity cause of action against Kipers is based upon the indemnification provision in the subcontract. The indemnification provision states: "Subcontractor shall indemnify and save harmless Contractor from and against any and all suits, claims, actions, losses, costs, penalties and damages, of whatsoever kind or nature, including attorneys' fees, arising out of, in connection with, or incident to Subcontractor's performance of this Agreement."

### 2. *The Motion to Disqualify Opposing Counsel from Jointly Representing the Burmans and Kipers*

### a. *Kipers's Deposition Testimony Triggers a Purported Conflict*

Hampton Builders's counsel believed Kipers's responses during his deposition revealed he had not been informed about the potential conflict arising from Graham's dual representation of Kipers and the Burmans. The specific

testimony concerned Kipers's understanding of the indemnity provision in his subcontract, and his written discovery responses addressing insurance coverage. This testimony, according to opposing counsel, revealed an actual conflict.

Kipers admitted that under the terms of the subcontract, he oversaw the project and supervised the subcontractors. Kipers also acknowledged that the subcontract contains an indemnification provision. Counsel read the indemnification provision into the record, and after a series of objections and followup questions, which were interrupted by a request to go off the record, Kipers testified: "Q. Okay. You do understand that, for example, you would be responsible for paying our legal fees? It would be legal fees, damages, damages for the Burmans; do you understand that? [¶] . . . [¶] A. Yes."

Kipers also answered questions inconsistently with his written discovery responses. He testified that he had insurance coverage, even though he did not notify his insurance carrier of the lawsuit, but his responses to form interrogatories stated he did not have insurance to cover this "incident." He also testified, for example, that he did not tell the Burmans that Hampton Builders failed to pull a mechanical permit, but his response to a request for admission stated the opposite.

b. *The Disqualification Motion Is Granted*

Following Kipers's deposition, Hampton Builders and Great Lakes (collectively Hampton), and The Draftsman Planning and Design, Mike Trifunovich, and Scott Christiansen (collectively designers) moved to disqualify Graham based upon what they believed was an actual conflict in the joint representation. Designers' attorney conceded the general rule that a nonclient does not have standing to disqualify counsel, but argued *Colyer v. Smith, supra,* 50 F.Supp.2d 966, applied.

The Burmans and Kipers challenged Hampton's and designers' standing to move to disqualify Graham and also maintained no conflict existed in the dual representation. Graham attested that he had "secured written waivers of conflicts of interest from each of my clients (that is, Mr. Burman, Mrs. Burman, and Mr. Kipers) as a prophylactic measure." These waivers were offered, but not submitted, to the trial court.

The trial court granted the motion, stating in its minute order: "Motion to Disqualify Bruce N. Graham and Graham & Associates is granted." The Burmans and Kipers obtained a 14-day stay of the disqualification order to

file a writ, and on the same day filed a notice of appeal[2] and a writ of supersedeas. After we imposed an initial stay to review the writ, we determined the matter did not warrant the issuance of a writ of supersedeas to stay the order disqualifying Graham.

## DISCUSSION

We must determine whether a legal exception permits Hampton and designers to disqualify Graham from jointly representing the Burmans and Kipers based upon a conflict that implicates the duty of loyalty owed to Graham's clients. We conclude that no exception exists that permits a nonclient without a legally cognizable interest to disqualify opposing counsel. Since Hampton and designers do not have any legally cognizable interest in the duty of loyalty owed to Graham's clients, they have no standing to move to disqualify Graham.

### 1. *Standard of Review*

Our review requires us to consider whether there is a legal basis for the trial court's disqualification order. "Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. [Citations.]" (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143 [86 Cal.Rptr.2d 816, 980 P.2d 371] (*SpeeDee Oil Change*).) " 'The trial court's exercise of . . . discretion is limited by the applicable legal principles and is subject to reversal when there is no reasonable basis for the action.' [Citations.]" (*Zador Corp. v. Kwan* (1995) 31 Cal.App.4th 1285, 1293 [37 Cal.Rptr.2d 754].) We must keep in mind a disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion and competing policy concerns. (*SpeeDee Oil Change, supra*, at pp. 1144–1145.) Here, the trial court grounded its ruling on a legal conclusion—the moving parties had the right (standing) to bring this disqualification motion. Since standing is a legal question (*IBM Personal Pension Plan v. City and County of San Francisco* (2005) 131 Cal.App.4th 1291, 1299 [32 Cal.Rptr.3d 656]), we are not concerned with the trial court's factual resolutions and inferences, which do not appear in the record.[3] We, therefore, review the trial court's exercise of discretion as a question of law in light of the relevant legal principles.

---

[2] The order granting the motion to disqualify counsel is appealable as a final order on a collateral matter. (*Henriksen v. Great American Savings & Loan* (1992) 11 Cal.App.4th 109, 111, fn. 1 [14 Cal.Rptr.2d 184].)

[3] There is no indication in the oral proceedings that the trial court made specific factual determinations or balanced the appropriate factors in granting this motion. (See *Smith, Smith & Kring v. Superior Court* (1997) 60 Cal.App.4th 573, 582 [70 Cal.Rptr.2d 507] ["In light of the importance the law places on clients' ability to retain an attorney of their choice and waive any potential conflict, we hold that trial judges must indicate on the record they have considered

## 2. *Duty of Loyalty Implicated in Joint Representation Cases*

■ "A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.' [Citations.]" (*SpeeDee Oil Change, supra,* 20 Cal.4th at p. 1145; see *Dino v. Pelayo* (2006) 145 Cal.App.4th 347, 351 [51 Cal.Rptr.3d 620].)[4] "[D]isqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility. [Citation.] The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process. [Citations.]" (*SpeeDee Oil Change, supra,* at pp. 1145–1146.)

■ In concurrent or joint representation cases, we are concerned with the attorney's duty of loyalty to each client. (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 282 [36 Cal.Rptr.2d 537, 885 P.2d 950] (*Flatt*).) "An attorney's duty of loyalty to a client is not one that is capable of being divided . . . ." (*Ibid.;* see *Truck Ins. Exchange v. Fireman's Fund Ins. Co.* (1992) 6 Cal.App.4th 1050, 1056 [8 Cal.Rptr.2d 228].) Joint representation of parties with conflicting interests impairs each client's legitimate expectation of loyalty that his or her attorneys will devote their " 'entire energies to [their] client's interests.' " (*Flatt, supra,* at p. 289.)

■ The principle of "undivided loyalty" is embraced in the rules of professional conduct governing potential and actual conflicts in joint representation cases. Rule 3-310(C)(1) and (2) of the State Bar Rules of Professional Conduct provide that an attorney "shall not, without the informed written consent of each client: [¶] (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or [¶] (2) Accept or continue representation of more than one client in a matter

---

the appropriate factors and make specific findings of fact when weighing the conflicting interests involved in recusal motions."].) Moreover, there is no specific reference in the record to indicate that the trial court adopted and applied the exception in *Colyer v. Smith, supra,* 50 F.Supp.2d 966. During argument, the parties also cited *DCH Health Services Corp. v. Waite* (2002) 95 Cal.App.4th 829 [115 Cal.Rptr.2d 847], which addresses standing of a nonclient to disqualify an attorney arising from a prior confidential relationship. Aside from the written order, at the conclusion of the oral proceedings, the trial court stated: "The eloquence of counsel has changed the court's mind. [¶] So the motion is granted. . . ."

[4] The trial court has authority to grant a motion to disqualify an attorney pursuant to Code of Civil Procedure section 128, subdivision (a)(5). Section 128, subdivision (a)(5) provides: "(a) Every court shall have the power to do all of the following: [¶] . . . [¶] (5) To control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto."

in which the interests of the clients actually conflict . . . ."[5] Unless there is informed written consent, an attorney cannot represent two or more clients at the same time whose interests conflict. In cases where an attorney concurrently represents two clients with conflicting interests, the automatic-disqualification rule applies. (*Flatt, supra,* 9 Cal.4th at p. 284.)

With these principles in mind, we must first determine whether Hampton and designers had standing to disqualify Graham.

### 3. Standing Requirement to Disqualify an Attorney

 Standing generally requires that the plaintiff be able to allege injury, that is, an invasion of a legally protected interest. (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 175 [59 Cal.Rptr.3d 142, 158 P.3d 718].) A "standing" requirement is implicit in disqualification motions. Generally, before the disqualification of an attorney is proper, the complaining party must have or must have had an attorney-client relationship with that attorney. (*Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Technology, Inc.* (1999) 69 Cal.App.4th 1399, 1404 [82 Cal.Rptr.2d 326].) Neither Hampton nor designers have or had an attorney-client relationship with Graham.

*DCH Health Services Corp. v. Waite, supra,* 95 Cal.App.4th 829, held that absent an attorney-client relationship, the moving party must have an expectation of confidentiality. For purposes of a disqualification motion, "[s]tanding arises from a breach of the duty of confidentiality owed to the complaining party, regardless of whether a lawyer-client relationship existed." (*Id.* at p. 832.) Thus, some sort of confidential or fiduciary relationship must exist or have existed before a party may disqualify an attorney predicated on the actual or potential disclosure of confidential information. (*Dino v. Pelayo, supra,* 145 Cal.App.4th at pp. 352–353 [in the absence of attorney-client or other confidential relationship, a party may not disqualify the attorney jointly representing the opposing parties based solely on their agreement to participate in confidential mediation]; see also *County of Los Angeles v. Superior Court* (1990) 222 Cal.App.3d 647, 658 [271 Cal.Rptr. 698] [attorney may be disqualified from representing a party where the attorney received work product of moving party from an expert previously designated as moving party's expert].) Neither Hampton nor designers have or have had a prior confidential relationship with Graham or have an expectation of confidentiality.

---

[5] The State Bar Rules of Professional Conduct govern attorney discipline, not standards for disqualification in the courts. (*Hetos Investments, Ltd. v. Kurtin* (2003) 110 Cal.App.4th 36, 47 [1 Cal.Rptr.3d 472].) We often look to the Rules of Professional Conduct for guidance.

■ We reject designers' argument that Code of Civil Procedure section 128, subdivision (a)(5), permits a court to dispense with standing requirements when evaluating attorney disqualification motions. (Code Civ. Proc., § 128, subd. (a)(5); see also *SpeeDee Oil Change, supra*, 20 Cal.4th at p. 1145.) That statute gives courts authority to grant disqualification motions brought by a party who meets the standing requirements. (See *SpeeDee Oil Change, supra*, at p. 1145.) Thus, a moving party must have standing, that is, an invasion of a legally cognizable interest, to disqualify an attorney.

### 4. Colyer *Recognizes a Minority View but Restates the Standing Requirements to Disqualify Opposing Counsel*

Hampton and designers ask this court to adopt and apply the minority rule in *Colyer v. Smith, supra*, 50 F.Supp.2d 966, to permit them to disqualify Graham. They have not cited a published California case that has adopted *Colyer*. Although cited in *DCH Health Services Corp. v. Waite, supra*, 95 Cal.App.4th at page 832, the Court of Appeal did not discuss or adopt the *Colyer* minority rule. (*Ibid.*) As noted, *DCH Health Services* addressed the question of whether a party with an expectation of confidentiality outside the attorney-client relationship has standing to move to disqualify opposing counsel. (*Id.* at pp. 832–833.) Our focus is not on the potential disclosure of confidential information, but the potential for a breach of the duty of loyalty. While *Colyer* also addressed the duty of loyalty, its minority view does not alter well-established standing requirements.

*Colyer v. Smith, supra*, 50 F.Supp.2d 966, addressed the question of when a party has standing to move to disqualify opposing counsel based on that counsel's breach of its duties of loyalty and confidentiality to a third party. (*Id.* at p. 969.) The majority view is that only a current or former client has standing. (*Ibid.*)

■ *Colyer*, however, recognized a minority view that a nonclient might have standing to bring a disqualification motion. A nonclient must establish a "personal stake" in the motion to disqualify opposing counsel that is sufficient to satisfy the standing requirements of article III of the United States Constitution. (*Colyer v. Smith, supra*, 50 F.Supp.2d at p. 971.) "Generally, only the former or current client will have such a stake in a conflict of interest dispute." (*Ibid.*) But, where the ethical breach is " 'manifest and glaring' " and so "infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of [his or] her claims" (*id.* at pp. 972, 971), a nonclient might meet the standing requirements to bring a motion to disqualify based upon a third party conflict of interest or other ethical violation (*id.* at pp. 971–972; see also Vapnek et al., Cal. Practice Guide: Professional Responsibility (The Rutter Group 2009) ¶ 4.322.11, p. 4-106.9, ¶ 4.322.13, p. 4-106.10 (rev. # 1, 2009)).

After articulating this view, the *Colyer* court did not invoke the minority rule. (*Colyer v. Smith, supra,* 50 F.Supp.2d at pp. 972–973.) Colyer did not have a personal stake in the duty of loyalty opposing counsel owed to his client and would suffer no harm from any purported breach. (*Id.* at p. 972.) Moreover, the alleged conflict, if it existed, did not "rise to the level where it infects the proceedings and threatens Colyer's individual right to a just determination of his claims." (*Id.* at p. 973.) Therefore, the *Colyer* court denied the motion to disqualify based on lack of standing.

█ Our reading of *Colyer v. Smith, supra,* 50 F.Supp.2d 966, recognizes a minority view inasmuch as it permits a nonclient to move to disqualify opposing counsel. But the nonclient must meet stringent standing requirements, that is, harm arising ‚from a legally cognizable interest which is concrete and particularized, not hypothetical. (*Id.* at pp. 971–973.)

The *Colyer* court rejected an argument designers advance here, that is, a nonclient has standing to move to disqualify opposing counsel to ensure the integrity of the process and the fair administration of justice. (*Colyer v. Smith, supra,* 50 F.Supp.2d at p. 973.) "None of these lofty values, however, implicates any personal right of Colyer which is burdened by the alleged conflict of interest. Colyer must show an 'invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.' [Citation.]" (*Ibid.*) Colyer's broad interest in the administration of justice was insufficiently concrete and particularized to support a finding of standing. (*Ibid.*) We agree with the *Colyer* court that imposing a standing requirement for attorney disqualification motions protects against the strategic exploitation of the rules of ethics and guards against improper use of disqualification as a litigation tactic. (*Ibid.*; see also *SpeeDee Oil Change, supra,* 20 Cal.4th at p. 1144.)

### 5. *Hampton and Designers Do Not Have Standing to Move to Disqualify Opposing Counsel*

█ Hampton contends that it has standing to disqualify Graham. We do not agree because Hampton cannot show any legally cognizable interest that is harmed by Graham's joint representation of their adversaries.

Hampton's "personal stake" to satisfy standing requirements involves Kipers's duty to indemnify Hampton Builders; Kipers will have to indemnify Hampton Builders if the Burmans prevail in their cross-complaint. Hampton contends that if Graham represents both clients, then Kipers might not get his attorney's undivided loyalty. If Graham tries to win the Burmans' case, Kipers will lose because he has to indemnify Hampton Builders. Thus, Graham represents potential adversaries (Kipers and the Burmans) and cannot devote his entire energies to either client. This is of no concern to Hampton.

Hampton has no legally cognizable interest in the duty of loyalty owed to Kipers and the Burmans. Only they will be harmed by any breach of the duty of loyalty. If either party is getting bad advice in connection with their joint representation, then the issue is between Graham and his clients.

Hampton also did not show how an ethical breach of the duty of loyalty, if one exists, affects a just determination of its claims against either the Burmans or Kipers. Hampton simply believes that Kipers is misaligned with the Burmans based on the indemnification provision. But on that point, Hampton and Kipers is not a better alignment because they are true adversaries, not hypothetical ones, in this litigation. The joint representation does not affect Hampton Builders's right to a legal determination on its cross-complaint against Kipers or in its lawsuit with the Burmans. While Hampton has an interest in the outcome of this litigation, its argument that Kipers's joint representation will leave him unable to pay the judgment and make Hampton Builders liable to the Burmans is not sufficiently concrete and is highly speculative. Such a highly speculative and tactical interest does not meet the standing requirements. (*Colyer v. Smith, supra,* 50 F.Supp.2d at p. 973; see also *Smith, Smith & Kring v. Superior Court, supra,* 60 Cal.App.4th at p. 582.)

Designers do not even speculate in an attempt to establish standing. They articulate no legally cognizable interest arising from the joint representation. Even *Colyer,* upon which they rely, requires an invasion of a legally cognizable interest to invoke the minority rule. (*Colyer v. Smith, supra,* 50 F.Supp.2d at p. 972.)

Without any legally cognizable interest, we are left with opposing parties' perception of a conflict arising from their adversaries' joint representation by Graham. Joint representation alone simply does not trigger an ethical violation requiring automatic disqualification. (See *SpeeDee Oil Change, supra,* 20 Cal.4th at p. 1145; *Dino v. Pelayo, supra,* 145 Cal.App.4th at pp. 355–356.) The Burmans and Kipers are entitled to the counsel of their choice, and if, or when, this joint representation does not serve either client, they may take the appropriate steps to ensure Graham's undivided loyalty to each of them.

In light of our conclusion that Hampton and designers lacked standing to bring a motion to disqualify Graham, we need not address the additional arguments presented to reverse the order.[6]

---

[6] Since we conclude that the moving parties had no legal basis to bring this motion, we do not address whether any ethical rules were violated. We note, however, that the record does not permit an inference that on its face these rules were violated. Graham attested that he had obtained written consent to the joint representation.

## DISPOSITION

The order disqualifying Graham & Associates, and Bruce N. Graham is reversed and the matter is remanded. Appellants shall recover costs on appeal.

Klein, P. J., and Kitching, J., concurred.