Filed 7/30/15  Estate of Hoult CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| Estate of BONNIE HOULT, Deceased. | |
| JASON FONTAINE, | G049302 |
| Petitioner and Respondent, | (Super. Ct. No. 30-2010-00356764) |
| v. | O P I N I O N |
| JENNIFER HOULT, | |
| Objector and Appellant. | |

Appeal from orders of the Superior Court of Orange County, Randall J. Sherman, Judge.  Affirmed.

Jennifer Hoult, in pro. per., for Objector and Appellant.

No appearance for Petitioner and Respondent.

\*          \*          \*

Jennifer Hoult appeals from the court's orders (1) setting aside Elizabeth Hoult Fontaine's transfer of a 2003 Lexus vehicle (the Lexus) to Bonnie Hoult, (2)

approving and settling Jason Fontaine's[1] accounting (as former administrator) of Bonnie's estate (the Estate), and (3) denying Jennifer's motion to disqualify Jason's counsel.[2] We affirm the court's orders.

FACTS

On December 14, 2009, Elizabeth, her two young daughters, and her mother Bonnie died tragically in murder-suicide shootings by Bonnie. Jason was the children's father and Elizabeth's estranged husband. At the time of the shootings, Jason and Elizabeth were living apart while embroiled in divorce proceedings, including a heated child custody battle. Jennifer is Elizabeth's cousin and was a beneficiary under Bonnie's will.

*Jason's Accounting Petition*

On July 23, 2012, Jason, as a former administrator of the Estate, filed a first and final report and account for the period between March 25, 2010 and May 1, 2012. Jason filed an amended account on January 14, 2013. In his report, Jason explained he had served as the Estate's administrator because the Orange County Public Guardian asked him to do so after Jennifer withdrew from controlling the Estate. The court issued

---

[1] To avoid confusion, we refer to the parties by their first names. We mean no disrespect.

[2] The orders regarding Jason's accounting and the Lexus are appealable under Code of Civil Procedure section 904.1, subdivision (10), and Probate Code section 1300, subdivisions (b) and (k), respectively. The order concerning attorney disqualification is appealable under Code of Civil Procedure section 904.1, subdivision (6) and *Meehan v. Hopps* (1955) 45 Cal.2d 213, 215.

All further statutory references are to the Probate Code unless otherwise stated.

2

Jason special letters of administration on March 25, 2010, and letters of administration on June 21, 2010.

Less than a year later, Jennifer petitioned to have Jason removed as the Estate's administrator. On May 1, 2012, Jason resigned and the court appointed Jennifer's nominee, Eric Becker, as successor administrator.

Jason reported the Estate's sole asset at the end of the accounting period was about $88,000, and that the Estate's beneficiaries are Joni Enriquez (as to Bonnie's jewelry) and Jennifer (as to the Estate's residue).

Becker objected to Jason's report and account on grounds Jason "failed to make the Estate assets productive, failed to properly inventory the Estate, continues to improperly account for Estate assets currently at hand, and appears to have misallocated Estate assets." Jennifer's declaration supporting Becker's opposition stated she had never been an administrator of the Estate.

*Jason's Lexus Petition*

Three months after resigning as administrator, Jason petitioned under section 850 for an order declaring that he owned the Lexus and that its title should be conveyed to him. He alleged Elizabeth had filed a Department of Motor Vehicles (DMV) application for transfer of the Lexus to Bonnie "less than a week before moving out of the family home and filing for marital dissolution." He alleged on information and belief there was no consideration for the transfer. He concluded, "Elizabeth's alleged gift of the Lexus to [Bonnie] is void."

*Jennifer's Disqualification Motion*

About one year later, Jennifer, as beneficiary and creditor of the Estate, moved for disqualification of Jason's counsel on grounds they simultaneously and

successively represented Jason (1) as the Estate's administrator and (2) in his personal capacity as plaintiff in three actions against the Estate.

*The Court's Rulings*

On September 11, 2013, the court (1) approved Jason's accounting and (2) ruled the Lexus should be returned to Elizabeth's estate "for disposition in that action." On October 4, 2013, the court denied Jennifer's disqualification motion because Jennifer lacked standing.

DISCUSSION

I. *The Lexus*

A. Factual Background[3]

Jason and Elizabeth were married on April 28, 2002. They paid for the Lexus from their joint marital account.

Between early 2006 and December 2008, Bonnie provided childcare from three to five days a week for Elizabeth's and Jason's daughters. Bonnie was not paid for her childcare services. Jason and Elizabeth never reached a final decision on whether to pay Bonnie for the babysitting. At the time, Bonnie did not need the money, whereas Jason and Elizabeth made just enough to cover their bills.

The Lexus was parked at Bonnie's home. Jason was told that Bonnie and Elizabeth would drive the Lexus because it was a safer vehicle for the children than Bonnie's Camry and because Bonnie had an easier time driving the Lexus because of her back and hip problems. Jason and Elizabeth never discussed giving the Lexus to Bonnie.

---

[3] We take the facts from the record. Jennifer's brief mostly recites evidence favorable to her cause, rather than all "significant facts" as required by California Rules of Court, rule 8.204(a)(2)(C).

4

Jason and Elizabeth separated on December 17, 2008. In November 2009, when Elizabeth moved to Texas, she told Jason she was taking the Lexus and the Camry to Texas. At some point, she told him she wanted him to "remove any claim to the" Lexus. After the deaths of Bonnie, Elizabeth, and the two young children on December 14, 2009, Jason became aware that the Lexus had been transferred into Bonnie's name.

At trial, the following documents were received into evidence. A California certificate of title signed by Elizabeth and Bonnie on December 19, 2008, transferred the Lexus from Elizabeth to Bonnie. A DMV document signed by Elizabeth on December 15, 2008, stated under penalty of perjury she was "giving" the Lexus to Bonnie. A DMV document signed by Bonnie on December 19, 2008, stated the transfer was a "gift."

The court found Elizabeth's transfer of the Lexus to Bonnie violated Family Code section 1100, subdivision (b), which prohibits a spouse from gifting community personal property without the other spouse's written consent. The court therefore invalidated and set aside the transfer.


B. Absence of Elizabeth's Estate as a Party

On appeal, Jennifer argues the court's Lexus order is void because the court failed to join Elizabeth's estate as a necessary party under Code of Civil Procedure section 389.

On September 13, 2013, Becker moved to compel joinder of Elizabeth's estate, pursuant to Code of Civil Procedure section 389, subdivision (a), as a necessary party to the pending trial on Jason's Lexus petition. Becker alleged Elizabeth's estate lacked a personal representative because Jason had appealed the court's appointment of

Jennifer to that position. Becker argued the trial should be continued (until a personal representative was appointed for Elizabeth's estate) or dismissed without prejudice.[4]

At the commencement of trial, the court ruled Elizabeth's estate was not an indispensable party. The court stated it would be inappropriate in this case to declare Jason the owner of the Lexus; instead, if the transfer of the vehicle was wrongful, it should be returned to Elizabeth's estate, and in the subsequent probate of Elizabeth's estate, the court would decide whether Jason was entitled to any interest in the Lexus. Accordingly, the court ruled Elizabeth's estate was *not* a necessary party to the instant trial on Jason's petition seeking to void Elizabeth's transfer of the Lexus to Bonnie.

Code of Civil Procedure section 389 provides in relevant part: "(a) A person . . . shall be joined as a party in the action if . . . (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) *as a practical matter* impair or impede his ability to protect that interest . . . . If he has not been so joined, the court shall order that he be made a party. [¶] (b) If a person as described in paragraph (1) . . . of subdivision (a) cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as indispensable. The factors to be considered by the court include: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be

---

[4] Jennifer's opening brief refers to "Becker and Jennifer's motions to join Elizabeth's Estate," but her record references do not reflect she herself made an oral or written motion. Nonetheless, because she and Becker effectively worked as a team below and because no one has challenged her standing on appeal to raise this argument, we will address it on the merits.

6

adequate; (4) whether the plaintiff . . . will have an adequate remedy if the action is dismissed for nonjoinder." (Italics added.)

The court did not err by declining to continue or dismiss the action under Code of Civil Procedure section 389. Elizabeth's estate was not prejudiced by the court's ruling. The court shaped relief to avoid prejudice to Elizabeth's estate by returning the Lexus to Elizabeth's estate rather than granting Jason's requested relief. And, since Elizabeth's estate was not a party to the trial and is not bound by the court's ruling, the issue of whether Elizabeth violated her spousal fiduciary duty under Family Code section 1100, subdivision (b) can be revisited in the probate of Elizabeth's estate. (See *Greif v. Dullea* (1944) 66 Cal.App.2d 986, 995 [indispensable party not bound by judgment in action when not joined].)

C. The Court Properly Voided the Lexus Transfer Under Section 850

As stated above, under Family Code section 1100, subdivision (b), a spouse may not make a gift of community personal property without the written consent of the other spouse. Under Family Code section 1101, subdivision (a), a "spouse has a claim *against the other spouse* for any breach of the fiduciary duty that results in impairment to the claimant spouse's present undivided one-half interest in the community estate . . . ." (Italics added.)

Jennifer contends Family Code section 1101, subdivision (a) provides "the only mechanism" for bringing a claim for breach of spousal fiduciary duty under Family Code section 1100, subdivision (b). She concludes the court lacked jurisdiction because (1) Bonnie was not Jason's spouse; (2) Elizabeth was not a party to the action; and (3) Jason failed to timely file a creditor's claim against Elizabeth's estate. She further argues any claim by Jason under Family Code section 1101 was untimely and would adversely affect the rights of a third person in violation of Family Code section 1101, subdivisions (d)(2) and (c)(4), respectively.

7

Jason, however, did not assert a claim under Family Code section 1101. Rather, he petitioned under section 850 for a probate court order voiding Elizabeth's transfer of title to the Lexus to Bonnie. Under section 850, subdivision (a)(2)(C), any "interested person" may petition for an order of the probate court in a case where "the decedent died . . . holding title to . . . personal property, and the property or some interest therein is claimed to belong to another."

The court held Jason had standing to bring a section 850 petition as an interested person who claimed the Lexus (to which Bonnie held title) belonged either to himself or to Elizabeth's estate. The court found Elizabeth's transfer of the Lexus to Bonnie violated Family Code section 1100, subdivision (b).[5] The court held the "proper remedy [was] to rescind the transaction pursuant to" section 850, and that "it would be

---

[5] The court based its finding on Jason's evidence the Lexus was acquired during the marriage, Elizabeth gifted it to Bonnie, and Jason never agreed to transfer the Lexus to Bonnie as compensation for babysitting.

The court struck as inadmissible hearsay Jennifer's testimony that in a December 2008 telephone conversation between Elizabeth and her, Elizabeth stated she and Jason agreed to give Bonnie the Lexus as payment for childcare and Elizabeth further stated, "'We're just filling out the paperwork.'" On appeal, Jennifer contends the court's ruling was erroneous under Evidence Code section 1261. She acknowledges, however, that she incorrectly cited Evidence Code section 1241, *not* Evidence Code section 1261, in her objection below to the probate court. The court's ruling was correct under either section of the Evidence Code. Under Evidence Code section 1241, the contemporaneous statement exception, the evidence *might* have been admissible to explain (if any explanation was necessary) Elizabeth's statement that she was filling out the paperwork. But no other evidence provided the necessary foundation that Elizabeth was engaged in this conduct at the time the statement was made. And even if the statement were somehow admissible to clarify Elizabeth's conduct as the hearsay declarant, it would not be admissible to clarify Jason's conduct because he was not the hearsay declarant being quoted. Under Evidence Code section 1261, the exception for statements of a decedent in actions against the estate, the evidence was inadmissible because Jason's claim was not against Elizabeth's estate. Moreover, Jennifer has forfeited her Evidence Code section 1261 argument on appeal because she did not cite this hearsay exception in the court below. (Evid. Code, §§ 353, 354.)

8

inappropriate to invoke [Family Code section] 1101," since Elizabeth's estate was not a party to the action.[6] The court ruled the Lexus "should go back to [Elizabeth's estate] for adjudication in that case."

Contrary to Jennifer's assertion, Family Code section 1101 does *not* provide the sole remedy for a nonconsenting spouse's claim the other spouse breached Family Code section 1100. Rather, a violation of Family Code section 1100, subdivision (b) gives the nonconsenting spouse "various remedies" which survive the breaching spouse's death. (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2015) [¶] 8:675, pp. 8-241 to 8-242; Ross & Moore, Cal. Practice Guide: Probate (The Rutter Group 2014) [¶] 4:19.1, p. 4-9.) Among these remedies is a section 850 petition for determination of ownership of property under the Probate Code. (14 Witkin, Summary of Cal. Law (10th ed. 2005) Wills and Probate, § 356, p. 446; Ross & Moore, Cal. Practice Guide; Probate, *supra*, [¶] 4:19.4, p. 4-10; 14 Witkin, Summary of Cal. Law, *supra*, § 355, p. 445.)[7] Furthermore, nothing in the language of Family Code

---

[6] In closing argument, Jason's counsel argued that under Family Code section 1101, an innocent spouse is entitled to 100 percent of property that has been fraudulently transferred. Family Code section 1101, subdivision (h) provides: "Remedies for the breach of the fiduciary duty by one spouse, as set forth in Sections 721 and 1100, when the breach falls within the ambit of Section 3294 of the Civil Code shall include, but not be limited to, an award to the other spouse of 100 percent, or an amount equal to 100 percent, of any asset undisclosed or transferred in breach of the fiduciary duty." Civil Code section 3294 applies when a "defendant has been guilty of oppression, fraud, or malice" when breaching a noncontractual obligation. Those arguments are more appropriately made in an action against Elizabeth's estate.

[7] Besides a section 850 petition, other remedies include that the "surviving spouse may bring a common law action against a *third party transferee* to set aside one-half of an unauthorized" transfer of community personal property without the requisite consent. (Ross & Moore, Cal. Practice Guide: Probate, *supra*, [¶] 4:19.1a, p. 4-9, italics added; Hogoboom & King, Cal.Practice Guide: Family Law, *supra*, at [¶] 8:676, p. 8-242; *In re Marriage of Stephenson* (1984) 162 Cal.App.3d 1057, 10 Ross & Moore, Cal. Practice Guide: Probate, *supra* 73 [set-aside of personal property gift]). And, "[t]hough not entirely clear, a nonconsenting spouse probably may pursue *both* set-aside relief

9

section 1101, subdivision (a) suggests it is intended to be an exclusive remedy.  (Cf. *Estate of Myers* (2006) 139 Cal.App.4th 434, 442 ["Nothing in the language of section 9653 [under which estate creditor may require personal representative to pursue claim] suggests it is intended to be an exclusive remedy"].)

Section 850, subdivision (a)(2)(C), by its terms, applies here.  Under that subdivision, an interested person "may file a petition requesting that the court make an order under this part" where the decedent died holding title to personal property claimed to belong to another.  Bonnie died holding title to personal property which Jason claims rightfully belonged to himself or to Elizabeth's estate.

Jason is an "interested person" under section 48, subdivision (a)(1)'s definition, which includes any "person having a property right in or claim against . . . the estate of a decedent which may be affected by the proceeding."  Subdivision (b) of section 48 further broadens the definition of "interested person":  "The meaning of 'interested person' as it relates to particular persons may vary from time to time and shall be determined according to the particular purposes of, and matter involved in, any proceeding."  (See also *Estate of Myers*, *supra*, 139 Cal.App.4th at p. 441 [section 850 has broad standing provision].)

Section 850 is contained in Part 19 of Division 2 of the Probate Code (governing the transfer of property claimed to belong to the decedent or another person).  (*Estate of Kraus* (2010) 184 Cal.App.4th 103, 110.)  "An action brought under [Part 19]

---

against the transferee and a 50 [percent]/100 [percent] value remedy against the transferor spouse . . . as a 'sanction' or 'penalty' for breach of fiduciary duty" under Family Code section 1101, subdivisions  (g) and (h).  (Hogoboom & King, Cal. Practice Guide: Family Law, *supra*, [¶] 8:691, p. 8-248.)

Additionally, "the surviving spouse may proceed against the now-deceased transferor spouse's estate for one-half the value of the unauthorized disposition."  (Ross & Moore, Cal. Practice Guide: Probate, *supra*, [¶] 4:19.2, p. 4-9.)  Finally, the aggrieved spouse has legal recourse under Family Code section 1101.  (Ross & Moore, Cal. Practice Guide: Probate, *supra*, [¶] 4:19.5, p. 4-10.)

10

may include claims, causes of action, or matters that are normally raised in a civil action to the extent that the matters are related factually to the subject matter of a petition filed under [Part 19]." (§ 855.) "'The probate court has general subject matter jurisdiction over the decedent's property and as such, it is empowered to resolve competing claims over the title to and distribution of the decedent's property.'" (*Estate of Kraus*, at p. 114.) "'In the exercise of its legal and equitable powers [citations], a superior court sitting in probate that has jurisdiction over one aspect of a claim to certain property can determine all aspects of the claim.'" (*Ibid.*)

The court's order that the Lexus be transferred to Elizabeth's estate was proper. Subject to exceptions not applicable here, "if the court is satisfied that a . . . transfer . . . should be made, the court shall make an order authorizing and directing the personal representative . . . to execute a . . . transfer to the person entitled thereto, or granting other appropriate relief." (§ 856.) "Section 850, by its clear and plain terms, does not *require* the probate court to find that the property in question belongs to the interested petitioning party." (*Estate of Kraus*, *supra*, 184 Cal.App.4th at p. 113.)

Jennifer argues that because Family Code section 1101, subdivision (a) provided Jason "with an adequate legal remedy against" Elizabeth's estate for his claim Elizabeth breached her spousal fiduciary duty, the holding in *Wilkison v. Wiederkehr* (2002) 101 Cal.App.4th 822, 835 "prohibited him" from petitioning under section 850 in the probate of Bonnie's estate. *Wilkison* is inapt. There, the plaintiff sued his aunt and alleged "a cause of action for quasi-specific performance, seeking to impose a constructive trust on the *proceeds* from the sale of the home" of his decedent grandmother. (*Wilkison*, at p. 825, italics added.) Because the plaintiff sought monetary damages, i.e., the sale proceeds, the Court of Appeal concluded: "[P]laintiff had an adequate legal remedy — a claim for damages — which he lost by failing to file a creditor's claim in his grandmother's probate proceeding. And because plaintiff had an adequate legal remedy, albeit not properly pursued, he cannot obtain equitable relief in

11

the form of quasi-specific performance of" (*id*. at pp. 832-833) the agreement between his aunt, his deceased grandparents, and his father (*id*. at p. 825) which required the grandmother "to leave the family home to plaintiff's father and his issue" (*id*. at p. 833).

Here, Jason did not seek specific or quasi-specific performance of a contract, nor did he seek monetary damages for breach of contract. Rather, he asserted a statutory claim to property held by the estate under section 850, subdivision (a)(2)(C), which authorizes the court to order a remedy "[w]here the decedent died in possession of, or holding title to, real or personal property, and the property or some interest therein is claimed to belong to another." When, after hearing, the court is "satisfied that a conveyance, transfer, or other order should be made, the court shall make an order authorizing and directing the personal representative or other fiduciary, or the person having title to or possession of the property, to execute a conveyance or transfer to the person entitled thereto, or granting other appropriate relief." (§ 856.) A section 850 petition is purely statutory. Nothing in section 850, or in the remedies provided by section 856, condition relief under those statutes to a finding that a legal remedy is inadequate. Jennifer has not cited any case imposing such a requirement to relief under section 850, nor have we found any such authority. Whether Jason had an "adequate legal remedy" against Bonnie's estate, much less against Elizabeth's estate as Jennifer asserts, is not a prerequisite for relief under section 850.

Nor did the court's ruling violate Elizabeth's right to due process or Bonnie's right to equal protection or to enter into contracts. Elizabeth's estate is not bound by the ruling she violated Family Code section 1100, subdivision (b), and therefore the matter can be heard when her estate is probated. As to Bonnie, Jennifer has no basis for her inaccurate assertion that "the trial court held that Bonnie had no right to be paid for providing child-care for her grandchildren."

Finally, Jennifer contends Elizabeth's DMV application for transfer of the Lexus was a written instrument within the meaning of Civil Code section 1614, which

12

provides that a "written instrument is presumptive evidence of a consideration." From that premise, she contends Jason failed to meet his burden under Civil Code section 1615 to show insufficient consideration supported the DMV application. But "the presumption of consideration under [Civil Code] section 1614 affects the burden of producing evidence and not the burden of proof." (*Rancho Santa Fe Pharmacy, Inc. v. Seyfert* (1990) 219 Cal.App.3d 875, 884.) "The effect of a presumption affecting the burden of producing evidence is to require the trier of fact to assume the existence of the presumed fact *unless and until evidence is introduced which would support a finding of its nonexistence, in which case the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption.*" (Evid. Code, § 604, italics added.) Thus, even assuming the DMV document was a written instrument under Civil Code section 1614, Jason presented substantial evidence Elizabeth gave the Lexus to Bonnie as a gift. Under Evidence Code section 604, the presumption no longer applies, and the court's ruling is supported by substantial evidence.

In sum, the court did not err in ruling that the Lexus must be returned to Elizabeth's estate.

II. *Jason's Accounting*

Becker filed written objections to Jason's accounting. Jennifer made oral objections at the hearing in both her opening statement and in her lengthy, detailed closing argument. (§ 1043, subd. (b) [interested person may object orally at hearing].) The court ruled Jennifer and Becker failed to meet their burden of proof to establish the validity of their objections to Jason's accounting.

On appeal, Jennifer contends the court's ruling was erroneous. Her appellate argument relies on the familiar rule governing claims against trustees: "Where a beneficiary seeks relief for a breach of trust, the beneficiary has the initial burden of proving the existence of a fiduciary duty and the trustee's failure to perform it.

13

[Citation.] The burden then shifts to the trustee to justify its actions." (*Van de Kamp v. Bank of* America (1988) 204 Cal.App.3d 819, 853.) Jennifer's appellate argument also relies on *Estate of Stevenson* (2006) 141 Cal.App.4th 1074 for the supposed proposition that "an estate is only liable for charges that benefit it."[8] But the rule Jennifer extracts from *Stevenson* is a misleading statement of the law. On the one hand, each time an estate pays a legitimate expense or satisfies a legitimate claim, the estate is benefited in the sense it is no longer subject to the claim. On the other hand, not every legitimate expense of the estate creates a positive increment of value to the estate. And to suggest that an expense is not legitimate unless it provides a positive increment of value to the estate is incorrect. The correct statement of the law in this regard is found in section 11004, which provides: "The personal representative shall be allowed all *necessary* expenses in the administration of the estate, including, but not limited to, necessary expenses in the care, management, preservation, and settlement of the estate." (Italics added.)

---

[8] *Stevenson* involved a claim for extraordinary probate attorney fees under section 10811. (*Stevenson, supra,* 141 Cal.App.4th at pp. 1077, 1091.) Under section 10811, subdivision (a), a court may allow additional compensation (beyond the statutory percentages for ordinary proceedings under section 10810) "for extraordinary services by the attorney for the personal representative in an amount the court determines is just and reasonable." (§ 10811, subd. (a).) Section 10811, subdivision (c) governs an agreement by an administrator's attorney "to perform extraordinary service on a contingent fee basis." *Stevenson* held the attorney fees agreement at issue was *not* a contingency fee agreement within the meaning of section 10811, subdivision (c). (*Stevenson,* at p. 1086.) The Court of Appeal further held the trial court's substantial reduction of the claim for extraordinary attorney fees was not an abuse of discretion under section 10811, subdivision (a) because such an award must take into account the value of the estate and because the law firm's "efforts, though 'heroic,' had done virtually nothing to benefit the estate," which, after the fee award, would have $427,000 in assets with $1.7 million still due its creditors. (*Id.* at p. 1091.) *Stevenson* is inapposite to claims for ordinary expenses of administration under section 11004.

14

Jennifer contends she and Becker met their initial burden of proving Jason's failure to perform his fiduciary duty and that the burden then shifted to the "trustee to justify its actions." Her brief in support of this contention, however, is an unfocused attack on nearly everything Jason did or did not do during his administration of the estate. And the court found the opposite to be true; Jennifer and Becker *failed* to meet their burden of proof to establish the validity of their objections to Jason's accounting. Section 11001 makes clear that the initial burden in a contest over an account is on the objecting party. "All matters relating to an account may be contested *for cause shown . . . .*" (*Ibid.*)

"'[W]here the issue on appeal turns on a failure of proof at trial, the question for a reviewing court [is] whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'" (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466.) Jennifer's evidence misses this standard by a wide mark. First, she cites virtually none of Jason's evidence received at trial, leaving it to this court to search the record to determine whether her claims were "uncontradicted and unimpeached." It is not the duty of the reviewing court to search the record to determine whether the evidence offered by Jennifer was "uncontradicted or unimpeached." Just as in an appeal challenging the sufficiency of the evidence to support a judgment, an appellant who "argues only favorable facts and evidence, ignoring evidence favorable to respondent (or entirely omitting pertinent facts), 'fails to demonstrate any error and waives the contention that the evidence is insufficient'" to demonstrate a lack of contradiction or impeachment of appellant's evidence. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2014) ¶ 9.144, p. 9-43.) Jennifer's reliance on her own evidence and claims, without reference to any

15

evidence presented by Jason (Jason and his attorney Celinda Tabucchi both testified), has waived her contention that the court erred by approving Jason's accounting.

Although not required to do so, we have conducted a limited search of the record for evidence that would contradict or impeach one of Jennifer's larger claims, i.e., that the court erred "by allowing [Jason] to charge the Estate for a CALSTRS payment he never made."[9] In a stereotypical example of the overblown rhetoric found throughout Jennifer's opening brief, she asserts: Jason "swore he paid CALSTRS $27,232.45 on December 5, 2011. Tabucchi testified that the payment was never made and that this perjured charge was an accounting measure to correct Fontaine's perjured inflated appraisal of the CALSTRS value in his July 15, 2011 Inventory." (Fn. omitted.) (The actual figure reported by Jason in his amended account was $27,232.56.)

Deconstructing Jennifer's CALSTRS claim, we first check the accuracy of the alleged "perjured inflated appraisal of the CALSTRS value" in Jason's July 15, 2011 inventory. There, we find Jason listed the following: (1) a CALSTRS death benefit in the amount of $6,163; (2) a CALSTRS allowance for the period 12/1/09 to 12/14/09, i.e., the CALSTRS allowance for benefits it owed from the first of the month to the date of death; and (3) a CALSTRS undistributed defined benefit contributions and interest in the amount of $31,616. We next check for evidence contradicting Jennifer's claim that this inventory listing was a "perjured inflated appraisal of the CALTRS value." We find in the record that on June 16, 2011, 29 days before the inventory was filed, CALSTRS reported in a letter to Jason's counsel that the "Benefits Payable to the estate of Bonnie Hoult" consisted of a "One-time Death Benefit of $6,163," an "Accrued Allowance for December 1 through December 14, 2009 (approx $2,261.12)", and a "Member's remaining Defined Benefit Contributions and Interest (approx $31,616)." Thus, Jason's

---

[9] CALSTRS is an acronym for the California State Teachers' Retirement System.

16

inventory and appraisal value was *exactly* the value reported to him by CALSTRS, not a "perjured inflated appraisal."

Next, we check for evidence contradicting Jennifer's assertion that the $27,232.56 payment to CALSTRS on December 5, 2011 was a "perjured charge," an "accounting measure" to correct Jason's perjured appraisal. The evidence we find in the record absolutely refutes Jennifer's unfair characterization. First, the June 16, 2011 letter from CALSTRS to Jason's counsel reported that CALSTRS had issued a payment to Bonnie after the date of her death in the amount of $3,671.36, which "must be returned to CALSTRS." Of course, this payment was issued before Jason's appointment as administrator. Jason's inventory and appraisal merely reported accepting an initial charge for receiving cash in the amount of $9,893. The June 16, 2011 letter from CALSTRS also showed that Bonnie owed $23,561.20 to CALSTRS as the balance of a loan established on August 1, 2008. Adding the amounts due CALSTRS results in a total of $27,232.56, precisely the amount shown on Jason's schedule as a "repayment" to CALSTRS. Jennifer apparently takes the position that a "repayment" can only be made as a separate disbursement from the estate's account, and that something nefarious must have occurred because CALSTRS simply deducted the amount owed to it as an offset to the amounts otherwise due to Bonnie. In a word, Jennifer's contention is absurd. The accounting is correct. A balance due from CALTSTRS of $12,791 was deposited to the estate's bank account on December 5, 2011. This is about $16 less than the appraisal had predicted based upon CASTRS's initial estimate in June 2011. Since the initial estimate had been charged to Jason in the inventory and appraisal, arguably the $16 should have been credited as a loss. But this is surely a de minimis discrepancy, and not a reason to disapprove the accounting.

17

We will not search the record for contradictory evidence of Jennifer's other 24 pages of accounting claims. Her failure to present all of the evidence has made that task unnecessary.

III. *Attorney Disqualification*

Jennifer contends the court erred by holding she "required an 'interest in the disqualification' or an attorney-client relationship for standing to" move to disqualify Jason's counsel (Counsel). She argues that "third-parties have standing to move for disqualification when they can demonstrate a 'legally cognizable interest which is concrete and particularized,'" and that she, as a beneficiary and creditor of the Estate, "demonstrated her 'concrete and particularized' rights in this Estate as an 'interested party,' giving her standing pursuant to" *Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1358 (*Great Lakes*). Jennifer also contends she had standing pursuant to *So v. Land Base* (C.D.Cal. Aug. 4, 2010, No. CV08-03336 DDP) 2010 Lexis 88657 (*So*), because Counsel's "'ethical violation[s were] so "manifest and glaring"' and '"open and obvious" that [they] "[confronted] the court with a plain duty to act."'"

The court denied Jennifer's motion on grounds she lacked standing to disqualify Counsel since she has never had an attorney-client relationship or any other confidential relationship with them. The court observed that Jennifer's allegation involved *Jason* "having two conflicting roles," not his attorneys who had always represented him in this action. The court further stated: "The *Great Lakes* court's concern [citation] 'that imposing a standing requirement for attorney disqualification motions protects against the strategic exploitation of the rules of ethics and guards against improper use of disqualification as a litigation tactic' fully applies here."

"Since standing is a legal question," we independently review the trial court's ruling. (*Great Lakes*, *supra*, 186 Cal.App.4th at p. 1354.) "Standing generally requires that the plaintiff be able to allege injury, that is, an invasion of a legally

18

protected interest." (*Id.* at p. 1356.) In the context of attorney disqualification motions, there are potentially three modes of acquiring standing. First, and most commonly, the moving party "must have or must have had an attorney-client relationship with that attorney." (*Ibid.*) Jennifer has never had an attorney-client relationship with Counsel.

Second, a nonclient "may disqualify an attorney predicated on the actual or potential disclosure of confidential information," if the non-client has or has had "some sort of confidential or fiduciary relationship" with the attorney. (*Great Lakes*, *supra*, 186 Cal.App.4th at p. 1356.) "Standing arises from a breach of the duty of confidentiality owed to the complaining party, regardless of whether a lawyer-client relationship existed. Thus, for example, a lawyer may be disqualified after improper contacts with an opposing party's expert witness." (*DCH Health Services Corp. v. Waite* (2002) 95 Cal.App.4th 829, 832.) Jennifer does not argue she has an expectation of confidentiality, or has or has had a confidential or fiduciary relationship with Counsel.

Third, pursuant to a federal minority view described in *Colyer v. Smith* (C.D.Cal. 1999) 50 F.Supp.2d 966, 971, footnote 2 (*Colyer*), a nonclient may have standing if an attorney's "ethical breach is '"manifest and glaring"' and so 'infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of [his or] her claims." (*Great Lakes*, *supra*, 186 Cal.App.4th at p. 1357.)

The Court of Appeal in *Great Lakes* explained that, although *Colyer* articulated the federal minority view, the district court there did *not* invoke the doctrine because the nonclient (Colyer) "did not have a personal stake in the duty of loyalty opposing counsel owed to his client and would suffer no harm from any purported breach. [Citation.] Moreover, the alleged conflict, if it existed, did not 'rise to the level where it infects the proceedings and threatens [the nonclient's] individual right to a just determination of his claims.'" (*Great Lakes*, *supra*, 186 Cal.App.4th at p. 1358.) "The *Colyer* court rejected [the argument that] a nonclient has standing to move to disqualify

19

opposing counsel to ensure the integrity of the process and the fair administration of justice. [Citation.] 'None of these lofty values . . . implicates any personal right of Colyer which is burdened by the alleged conflict of interest. Colyer must show an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."'" (*Id*. at p. 1358.)

Jennifer argues that, as "both a beneficiary and a creditor of this Estate, [she] holds 'concrete and particularized' rights in this Estate as an 'interested party,'" and "pursuant to *Great Lakes*, . . . has third-party standing to move for disqualification to protect her interests as beneficiary and creditor." She also relies on *So*, which stated a nonclient may have standing to move for disqualification when counsel's "ethical violation is so 'manifest and glaring' or 'open and obvious' that it 'confront[s] the court with a plain duty to act.'" (*So*, *supra*, 2010 U.S. Dist. Lexis 88657.) Jennifer asserts Jason (1) served as the Estate's administrator while simultaneously acting adversely to it by allegedly bringing two civil actions against the Estate, and (2) after stepping down as administrator, successively acted against the Estate with his Lexus petition.[10] Jennifer argues Counsel assumed a duty to protect the Estate under *Baker Manock & Jensen v. Superior Court* (2009) 175 Cal.App.4th 1414, 1422-1423 (*Baker*)[11] and that Counsel "have repeatedly breached this duty and engaged in a course of prohibited simultaneous and successive representation attacking" the Estate. She asserts Counsel were prohibited

---

[10] Jennifer ignores the circumstances under which Jason allegedly came to serve as the Estate's administrator (as described in Jason's accounting petition and his attorney's closing statement), i.e., that he was asked to do so by the Orange County Public Guardian because there was no one else to administer it.

[11] *Baker*, *supra*, 175 Cal.App.4th at p. 1422 stated: "[W]e conclude the attorney for the executor does not have a conflict of interest merely because he or she represents one beneficiary of a will in a dispute with another beneficiary, unless such representation presents a conflict between two clients of the attorney, namely, the executor and the represented beneficiary."

20

from representing Jason as an adversary of the Estate, relying on *Baker* and other cases and State Bar Rules of Professional Conduct, rule 3-310(C).

But Jennifer's contention "founders on the threshold question of standing." (*Colyer*, *supra*, 50 F.Supp.2d at p. 968.)  Under *Colyer*, Jennifer bore the burden of showing that Counsel's manifest ethical breach infected the litigation and impacted her interest in a just determination of her claims as a beneficiary and creditor of the Estate. (*Id*. at pp. 968, 971-972.)

Jennifer asserts she has a concrete, particularized, and legally cognizable interest due to her status as "beneficiary and creditor" of the Estate.  Beyond this assertion, however, she fails to articulate how her interest was *invaded* by Counsel's alleged ethical lapses.  *Colyer* requires the nonclient to "show an 'invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'"  (*Colyer*, *supra*, 50 F.Supp.2d at p. 973.)  The modifiers in phrases (a) and (b) clearly relate to the requisite "invasion," not the "legally protected interest," since it would be nonsensical to describe the legal interest as actual and imminent.  Stated another way, Jennifer fails to identify any personal stake she had in the duty of loyalty or confidentiality Counsel owed to Jason (in his dual roles as administrator and individually) or any specific harm Jennifer suffered from any purported breach.  (*Great Lakes*, *supra*, 186 Cal.App.4th at p. 1358.)

The court properly ruled Jennifer lacked standing to move to disqualify Jason's attorneys.  "[I]mposing a standing requirement for attorney disqualification motions protects against the strategic exploitation of the rules of ethics and guards against improper use of disqualification as a litigation tactic."  (*Great Lakes*, *supra*, 186 Cal.App.4th at p. 1358.)  "'Because of this potential for abuse, disqualification motions should be subjected to "particularly strict judicial scrutiny."'"  (*So*, *supra*, 2010 U.S. Dist. Lexis.)

21

DISPOSITION

The orders are affirmed.  Because Jason made no appearance in this appeal, no costs are awarded.

IKOLA, J.

WE CONCUR:

O'LEARY, P. J.

THOMPSON, J.