Filed 4/13/23  Schwenn v. County of Riverside CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| MARY BERNADETTE SCHWENN, | |
| Plaintiff and Appellant, | E073140 |
| v. | (Super.Ct.No. PSC1300415) |
| COUNTY OF RIVERSIDE et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Kira L. Klatchko, Judge.

Affirmed.

Mary Bernadette Schwenn, in pro. per., for Plaintiff and Appellant.

Law Offices of Michael R. Kaiser and Michael R. Kaiser for Defendants and Respondents.

1

Plaintiff and appellant Mary Bernadette Schwenn appeals after a jury trial. Schwenn brought suit against defendants and respondents County of Riverside (County), Riverside County Department of Animal Services (RCDAS), and 11 of RCDAS's officers:  Rita Gutierrez, Luis Rosa, Lisa Boughamer, Jason Salazar, Eric Espejo, Gerald Duchene, James Huffman, Hector Palafox, Jose Fernandez, Paul Villanueva, and Marcel Martinez[1] in relation to entries onto her property located on "Fan Hill-Right-Of-Way" in Indio Hills (Property).  Schwenn alleged officers violated her civil rights pursuant to 42 U.S.C. section 1983 by searching the Property without warrants and by seizing animals.  A jury signed a special verdict finding that the County did not have an official policy permitting searches of property by animal control officers without a warrant and without exigent circumstances, and that the officers did not search the Property without a warrant.

In this appeal, Schwenn claims (1) the trial court erred by excluding testimony from members of the Riverside County Board of Supervisors (Board) who were supervisors in 2013; (2) the trial court erred by denying her motion to disqualify Defendants' counsel based on the County failing to abide by the terms of Government Code section 25203; (3) the trial court erred by applying collateral estoppel to find exigent circumstances had been conclusively determined for several dates that officers entered the Property; and (4) exigent circumstances was inapplicable to the 105 searches of the Property by officers.

---

[1]  The County, RCDAS and the officers are referred to collectively as Defendants.

2

## FACTUAL AND PROCEDURAL HISTORY[2]

A.    PRIOR APPEAL AND COMPLAINTS FILED AFTER COURT OF

APPEAL DECISION

Schwenn filed a prior appeal in this court (case No. E053200).[3]  That case

involved searches of the Property by animal control officers between 2007 and 2010

"without the consent or authority of a warrant, exigent circumstances, probable cause or

implied consent and against the will of [Schwenn]."  It also involved the seizure of

several puppies.  In our unpublished opinion filed on June 4, 2013, this court found that a

demurrer filed by the County and eight RCDAS officers to Schwenn's third amended

complaint should have been granted in part by the trial court, but the trial court should

have allowed several of the causes of action to proceed.  The matter was returned to the

trial court to allow Schwenn to file a fourth amended complaint.

According to the record provided on appeal, rather than file a fourth amended

complaint, Schwenn filed an original complaint for violation of civil rights against

County and RCDAS.  She alleged that starting in April 2013 animal control officers

entered the Property without a warrant, and there were no exigent circumstances, and no

permission to enter the Property.  She alleged numerous instances in which animal

control officers entered the Property to either seize animals or to investigate complaints

---

[2]  Neither party has provided this court with a comprehensive statement of the procedural history of the case or a summary of the facts from the jury trial.

[3]  We take judicial notice on our own motion of the prior opinion in case No. E053200.

about the animals. These events occurred between April 2013 and October 2013. She alleged all of these actions violated her civil rights as animal control officers seized animals from the Property without due process or just compensation. She also filed requests for several temporary restraining orders and injunctions to keep RCDAS from destroying the animals, described as wolf hybrid dogs and puppies, which she claimed were illegally seized from the Property. Schwenn provided as exhibits all of the citations she had received from the County that were posted on the Property (green notices). She listed all of the animals taken from the Property. On October 16, 2013, service of the complaint was quashed.

On December 19, 2013, Schwenn filed a first amended complaint. Schwenn provided numerous pages of facts outlining the entries onto the Property. The causes of action included a violation of civil rights under 42 U.S.C. section 1983; violation of civil rights under Civil Code section 52; negligence per se; invasion of privacy; negligent infliction of emotional distress; and intentional infliction of emotional distress. On January 17, 2014, the County filed a demurrer to the first amended complaint.

Schwenn filed a second amended complaint on April 1, 2014. The causes of action included a violation of civil rights under 42 U.S.C. section 1983; violation of civil rights under Civil Code section 52; negligence per se; invasion of privacy; negligent infliction of emotional distress; and intentional infliction of emotional distress.

Schwenn filed a third amended complaint on July 7, 2014, which she amended on September 12, 2014. The causes of action included a violation of civil rights under 42 U.S.C. section 1983; violation of civil rights under Civil Code section 52; negligence per

4

se; invasion of privacy; negligent infliction of emotional distress; and intentional infliction of emotional distress. Defendants filed a demurrer on September 16, 2014. The demurrer to the third amended complaint was granted.

On December 5, 2014, Schwenn filed her fourth amended complaint (FAC) alleging one cause of action for a violation of civil rights pursuant to 42 U.S.C. section 1983. Schwenn alleged that Defendants violated her civil rights by conducting unreasonable searches and seizures at the Property without warrants. Exigent circumstances did not justify the searches. Further, Defendants violated her civil rights by taking her property—several animals—without due process of law. RCDAS officers were not entitled to immunity as County employees. Defendants filed a demurrer to the FAC. On February 3, 2015, the trial court overruled the objection in the demurrer by Defendants that the FAC was uncertain. Defendants were allowed to modify their answer to the FAC to argue that the officers did not violate Schwenn's federal Constitutional rights, and that the officers did not need warrants because exigent circumstances allowed for entry onto the Property. Defendants signed a waiver of the five-year trial rule of Code of Civil Procedure section 583.310.

B.    TRIAL PREPARATION

On October 1, 2015, Defendants requested a jury trial. The matter was continued several times because of a criminal case for animal cruelty that had been brought against Schwenn, which was proceeding at the same time (Riverside County Superior Court case No. INF1301924). Trial was continued until 2019.

The parties filed a joint exhibit list.  The exhibits included 114 green notices beginning April 18, 2013, and ending October 21, 2013.  The exhibits also included impound letters, kennel records, temperature records for the Property, photographs of the Property, notices of hearings and seizure notices, search warrants, and violation notices.

The parties also provided a joint statement.  Schwenn alleged that the County and the officers violated her civil rights causing her personal injury and property damage. They searched the Property and seized animals without affording her with post-seizure hearings.  Defendants alleged their actions were privileged.  Schwenn brought a motion to disqualify Defendants' counsel, Mark Kaiser, prior to trial, which was denied, and will be discussed in detail, *post.*  Schwenn also brought notices to compel witnesses to appear at trial, which will be discussed, *post*.  Jury selection began on March 18, 2019.

B.    TRIAL

We note that neither party has provided a summary of the trial proceedings in their briefs.  We will provide our own summary of the facts based on our review of the record.

1.    *SCHWENN'S CASE*

Schwenn testified on her own behalf.[4]  She had wolf hybrid dogs and puppies on the Property in April 2013.  One of her dogs was missing on April 29, 2013, and she suspected that her neighbor, Kitty Pallesen, had taken the dog.  The dog was euthanized by RCDAS.  Schwenn insisted the dog was not sick.

---

[4] Most of Schwenn's testimony was stricken for lack of foundation or due to hearsay.

6

Schwenn claimed that she lived off a private road and the Property could not be seen from the area of a public easement. A person could not see water and food dishes from the public easement; a person had to enter the Property in order to see the food and water dishes. Schwenn found 105 green notices on her gatepost from April 2013 through October 2013. Schwenn showed photos to the jury of vehicles and tarps where she lived on the Property. Schwenn slept on a mattress in a tent between two vehicles.

The numerous green notices stated that officers had been at the Property to conduct animal welfare investigations. Schwenn admitted that officers had a right to be on the Property on May 20, 2013, and July 25, 2013, because they had obtained search warrants. Schwenn was arrested on July 25, 2013, and was out on bail on August 11, 2013. A condition of her bail was to have no animals on the Property.

Schwenn called several officers including Lisa Boughamer; Gerald Duchene; Eric Espejo; Paul Villanueva; Jose Fernandez; James Huffman; Marcel Martinez; Hector Palafox; and Jason Salazar. The officers received training on "search and seizure" at the time they were hired. The officers testified that they went to the Property on various dates from April 2013 through October 21, 2013. They left green notices regarding their visits. The officers were first called to the Property due to complaints from Schwenn's neighbor Pallesen of dogs being loose on the Property. Pallesen also complained the dogs did not have enough food and water. Most of the green notices stated the officer had been at the Property to conduct animal welfare investigations pursuant to Penal Code section 597, and noted violations that Schwenn needed to correct.

Between July 25, 2013, and August 2, 2013, the officers removed all the animals they could capture from the Property. They returned several times thereafter to capture additional animals. Two dogs were impounded on September 24, 2013.

Boughamer, Duchene, Villanueva, Martinez, Fernandez, and Palafox indicated that there had been a policy initiated by their supervisor to perform daily welfare checks at the Property. It was an ongoing investigation, and they did not obtain inspection warrants each time they went to the Property. They all insisted the local water department had given the officers permission to access the road that led to the Property. Duchene had been told by either Rosa or Gutierrez that they had permission to access the road. Martinez and Salazar assumed the access road was a public road.

When Duchene visited the Property, if he could see food and water from the access road, he would leave. He would call out for Schwenn and tell her why he was at the Property. She was only present one time. On one or more occasions, he entered the Property briefly to fill food bowls that were near the gate to the Property. He felt he had to fill the bowls with food or the dogs on the Property would starve. He entered the Property on one occasion to check on a report of puppies that were dying. Duchene understood that Schwenn's home was the tent between the two cars parked on the Property. It was hard to tell where the property lines for the Property started and ended. He never entered the tent or cars.

When Boughamer would arrive at the Property, she would call out from the road to determine if anyone was present. She would try to see if there was food and water from the road outside the Property. If she could not see food and water from the road,

8

she would enter the Property, determine whether there was food or water, and then leave. Boughamer left water for the dogs on at least two occasions but did not note on the green notice she had left food and water. The officers did not note the temperature at the time they were at the Property.

Espejo indicated that viewing an animal in distress in plain view from outside the Property would allow entry onto the Property without a warrant. Espejo only went to the Property two times and viewed the Property from the access road; Schwenn was not home. His supervisor told him he could access the road leading to the Property. Espejo never searched the tent or vehicles.

Villanueva went to the Property approximately 20 times to check on the animals. He stayed on the access road. He accessed water and food bowls that were empty by walking across the desert where there was no fence. He added water to bowls that were near a rope between two posts, which appeared to show the start of the Property. Schwenn did not have a doorbell or a door. He never saw Schwenn at the Property. Villanueva never searched the tent or vehicles.

Fernandez did not park on the Property. He entered the Property on three occasions. He never went behind the two vehicles or the tent. He never saw a dog that needed immediate help. He met Schwenn one time on the Property and she allowed him to fill up an "Igloo" with ice water. Fernandez never searched the vehicles or tent.

Huffman met Schwenn at the Property on July 19, 2013. Pallesen had reported that she had seen puppies on the Property and was concerned. Huffman went to the Property at the direction of Gutierrez and observed the puppies. The next day he and

9

other officers seized the puppies, who were only a few days old, and their mother, because they were in the desert in the middle of summer and there were other stray dogs around them. The puppies were in danger of perishing and mother was injured. He did not obtain a warrant. Huffman did not search the vehicles or tent.

Huffman indicated that the Property had only two posts with a rope across them at a driveway; otherwise, there were no other fences denoting the property line. He could see food and water bowls from his truck parked on the access road.

Martinez did not go past the rope that was on the Property to fill food and water bowls, as they were placed near the rope. Martinez never entered the area where Schwenn's vehicles and tent were located and never searched them.

Salazar had no idea where the property lines for the Property were located. He only filled the food and water bowls that were near a rope strung to two posts on the Property. He had to fill the bowls approximately 15 times. He never went past the rope. He never entered or searched the area where the tents and vehicles were located.

Luis Rosa was a RCDAS supervisor. Schwenn had filed a previous lawsuit against Rosa for trespass on the Property. Rosa went to the Property with Duchene and Salazar on April 18, 2013. There had been a report of 15 animals being on the Property; notice of too many animals was posted.

Elizabeth Coles lived near Schwenn. Coles understood that the road leading to the Property was a private road but she had never confirmed it was a private road. Coles oftentimes gave Schwenn rides to obtain water and food for the dogs. Coles had put water in containers that were behind Schwenn's vehicles, which could not be seen from

10

the road.  Coles was present when officers took some puppies from the Property.  She agreed to take some of the puppies.  The officers checked on the puppies several times and she eventually found homes for them.  She insisted that Schwenn always had food and water out for her animals.  The only time she saw officers by Schwenn's vehicles were when they were taking the puppies.  Schwenn had about 20 adult animals on the Property.  Coles had been friends with Schwenn since 2009 and had never seen a dead or injured animal on the Property.

Rosa was present when a search warrant was executed on the Property.  No animals that were sick or injured were located.  Rosa insisted the local water district had given RCDAS access to their road that led to the Property for the purpose of "abating problems created by the presence of a large number of feral and stray dogs."  The Property had two vehicles that were parked, which made up the "walls" of Schwenn's home.  Several dogs from the Property were impounded between July 25, 2013, and August 1, 2013, for running at-large.  They were running off the Property.  An animal could be impounded in Riverside County for not being licensed and not being microchipped.  A hearing was conducted on the impounded dogs on September 11, 2013.  Schwenn did not appear.  When Schwenn was arrested on July 25, 2013, RCDAS became concerned that no one was caring for the animals.  RCDAS did not obtain an inspection warrant each time they went to the Property because everything was in plain view.

Pallesen lived four miles from the Property.  She brought water and food for the dogs on the Property every day between April 2013 and July 2013.  There were at least 10 to 12 dogs.  The dogs were "weak, starving, scared."

11

Kay Still helped Schwenn get water and food for the dogs on the Property. Still helped Schwenn fill water containers around the Property. Still understood that Schwenn's home was between the two vehicles on the Property. Still had seen officers on the Property. She insisted she would have taken care of the animals on the Property while Schwenn was in jail.

2.      *DEFENDANTS' CASE*

Pallesen was recalled. Pallesen had seen dead puppies on the Property on June 14, 2013. She took several other photographs of dead puppies on other days at the end of June. She gave the photographs to Gutierrez. In late April 2013 she removed a dog from the Property who she believed was dying. The dog died the next morning.

E.      MOTIONS AND TRIAL VERDICT

After the presentation of evidence, Defendants brought an oral motion for nonsuit, and a supplemental written motion for nonsuit and directed verdict. At an initial hearing, Defendants' counsel argued that each of the officers had qualified immunity.[5] The trial court noted that the officers who testified all agreed they went to the Property at the direction of Gutierrez. Since some of the officers had previously been sued for trespass, they were aware they were not welcome on the Property.

Defendants' counsel argued that the property line at the Property was where the rope was between two posts, and that only Boughamer, Duchene, Villanueva, and Salazar passed the rope. Defendants' counsel argued that the officers did not go into the tent or

_____

[5]  Defendants also addressed the issue of collateral estoppel, which will be discussed, *post*.

12

vehicles; that their actions were akin to walking up to a house and ringing the doorbell to investigate a report of animal cruelty. Defendants' counsel argued the water and food bowls the officers filled were visible from the front gate. They never went into the back of the vehicles or tent unless they had a warrant. The trial court found that only Palafox, Duchene, Salazar, Villanueva, and Boughamer went onto the Property. The nonsuit was proper for those who did not cross the property line.

The matter was heard again on April 10, 2019. The trial court first stated that it was a jury question as to whether there were exigent circumstances on the dates that officers went past the rope at the Property. The trial court rejected that going up the driveway or being on the access road was a violation of Schwenn's civil rights.

The trial court stated Duchene, Villanueva, Huffman, Palafox, Boughamer, and Rosa were on the Property without a warrant. Gutierrez was their supervisor. It was apparent that they were entering searching for evidence of criminality even though it was characterized as trying to feed and water the dogs.

The trial court granted the nonsuit for Salazar, Espejo, Martinez and Fernandez based on them never having crossed the property line.

On April 11, 2019, the jury entered its verdict. It found that the County did not have an official policy permitting searches of property by animal control officers without a warrant and without the existence of exigent circumstances. It found that Duchene, Huffman, Palafox, Villanueva, Rosa, Boughamer, and Gutierrez did not search Schwenn's home without a warrant. The jury awarded no damages to Schwenn and awarded costs of suit to Defendants.

13

Schwenn filed a motion for new trial and for judgment notwithstanding the verdict. Defendants filed a memorandum of costs totaling $15,313.60. The trial court denied Schwenn's motion for new trial. Schwenn's motion for judgment notwithstanding the verdict was also denied. The trial court granted costs to Defendants. Judgment was entered on April 30, 2019; notice of entry of judgment was filed on May 16, 2019.

## DISCUSSION[6]

### A.    INADEQUATE BRIEFING

The briefs filed by the parties in this appeal raise serious concerns. Schwenn provides no statement of facts. Schwenn provides a procedural background with only a summary of some actions in the trial court and does not cite to the record. Defendants' respondents' brief does not assist this court as there is only a brief summary of the facts with no citation to the record.

California Rules of Court, Rule 8.204(a)(2)(C) requires that the appellant's opening brief provide "a summary of the significant facts limited to matters in the record." A statement of facts in the appellant's opening brief is mandatory, not optional.

"A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts

---

[6] Schwenn has brought several requests for judicial notice, some of which this court has already granted. The requests for judicial notice filed on November 9, 2021, and April 25, 2022, for which a decision was reserved, are now denied as not necessary for resolving the issues raised on appeal.

in the record that support the claim of error.  [Citations.]  When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.'  [Citations.]  Hence, conclusory claims of error will fail."  (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)  "[I]t is not the role of an appellate court to carry appellate counsel's burden."  (*Id.* at p. 412)

" 'It is the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations.'  [Citations.]  If a party fails to support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument deemed to have been waived."  (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.)

The reporter's transcript in this case is over 1,300 pages and the clerk's and supplemental clerk's transcripts are over 3,000 pages.  This court was required to review the record independently to determine the relevant facts.  However, since Schwenn has provided some factual background in the argument section, we will review her claims.

### B.    EXCLUSION OF WITNESSES—BOARD OF SUPERVISORS

Schwenn insists the trial court erred by excluding the testimony of Board members who were in office in 2013.  She insists they would have provided relevant testimony as to the hiring of outside counsel by the County and to address the search and seizure training of officers.

## 1. ADDITIONAL FACTUAL BACKGROUND

The parties filed a joint witness list on January 25, 2019. The only mention of the Board was that a custodian of records would be called relating to a hearing conducted on March 25, 2014. Schwenn filed notices to compel attendance of witnesses before the court on March 5, 2019. These included the officers. Other persons included were John F. Tavaglione, Marion Ashley, Jeff Stone and Keven Jeffries. They were only described as "defendant."

After the jury was empaneled and Schwenn started her testimony, Defendants' counsel noted that Schwenn had filed notices to compel to have witnesses Jeff Stone, Marion Ashley, Keven Jeffries, and John Tavaglione appear for trial. These individuals had not been included in the joint witness list. The trial court noted, "Well, that pretty much settles it right there. You can't compel the attendance of someone not on the witness list." Schwenn responded that they were "parties" because they were members of the Board at the time. Schwenn believed that she had listed "the Board" as witnesses. The trial court reviewed the joint witness list filed on January 25, 2019, and these four persons were not on the witness list.

The trial court stated that they had all reviewed the witness list together. There was no discussion about "calling the Board of Supervisors." The trial court was not going to add any additional witnesses.[7] The trial court stated, "We're not going to add

---

[7] Schwenn admits that the pretrial discussion of the witness list has not been provided on appeal. Hence, we must presume the trial court was correct.

those people at the last minute and you just filed your notices to allegedly compel their attendance on March the 5th of 2019."

2.      *ANALYSIS*

"It is . . . well established that courts have fundamental inherent equity, supervisory, and administrative powers, as well as inherent power to control litigation before them." (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967.)  " 'That inherent power entitles trial courts to exercise reasonable control over all proceedings connected with pending litigation . . . in order to insure the orderly administration of justice.' " (*Ibid*.)  The trial court here could properly determine the failure to include these four names on the joint witness list, and by filing the notices to compel just prior to trial, that allowing these witnesses to testify would disrupt the proceedings and that exclusion was necessary.

Initially, there is no confirmation that these persons were on the Board in 2013. Additionally, Schwenn has provided nothing to this court to confirm that these persons could provide the testimony she claims on appeal; there is nothing but Schwenn's self-serving statements that they would have provided relevant testimony.  While Schwenn suggests that the evidence produced would provide that the Board failed to properly hire outside counsel (relevant to her claim that Kaiser should have been disqualified as counsel for Defendants) and that the officers were not properly trained, she has provided no offer of proof how these four witnesses would testify.  Again, there is nothing confirming that these four persons were in fact Board members in 2013 and possessed this information.  We can only speculate regarding what any of these witnesses would

17

have said and whether exclusion of the testimony was prejudicial.  There is no evidence of witness statements or depositions.[8]  As such, any exclusion of the four witnesses included in her motions to compel cannot be found prejudicial by this court and does not require reversal of the jury verdict.

C.    DISQUALIFY DEFENSE COUNSEL

Schwenn insists that Defendants' counsel, Kaiser, should have been disqualified as the County was required to publicly vote before hiring outside counsel (by a two-thirds vote) pursuant to Government Code section 25203.

1.    *ADDITIONAL FACTUAL BACKGROUND*

On March 7, 2019, Schwenn filed her ex parte application for an order shortening time for hearing a motion to disqualify Kaiser, for the County's failure to comply with Government Code sections 25203 and 54950.  Schwenn argued that in order to hire outside counsel (counsel other than county counsel), the Board had to approve the hiring by a two-thirds vote.  Schwenn insisted she had done extensive research of the Board meetings.  She had reviewed minutes from all Board meetings since Kaiser was hired and could not find such approval.  Kaiser should be disqualified.  Numerous Board meeting minutes were attached as exhibits.

---

**8**  Schwenn has failed to provide any citation to the record that supports that these persons were on the Board in 2013 and how they would likely testify.  It is not this court's job to search the record to determine if such evidence exists.  "[I]t is not the role of an appellate court to carry appellate counsel's burden."  (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 412.)

The trial court heard the motion on March 19, 2019, after opening statements. Kaiser complained he had not had time to file opposition but agreed to have the trial court decide the motion on that day. The trial court tentatively ruled it was not clear that the failure of the Board to approve the hiring of Kaiser was a proper basis for disqualification at the time of trial. The trial court was planning to deny the motion.

Schwenn argued that the County was required to use county counsel for all litigation. The Board did not have an open hearing prior to hiring Kaiser. The trial court understood Schwenn's argument but stated, "The problem is that those things are things you may have to assert in a separate action. They are not a basis as far as you articulated to disqualify trial counsel especially now at the time of trial. Those are things that if they did or didn't follow their own policies in hiring Mr. Kaiser, that's a separate issue as to whether he's able to proceed today. They obviously think they did hire him correctly." The trial court stated that even if what Schwenn argued was true, it would not allow for disqualification of counsel at trial.

Kaiser argued that Schwenn did not have standing to raise the issue. Further, the County passed Resolution 90-182 on May 15, 1990, which provided that a vote was not required to hire outside counsel in every case. Schwenn's motion to disqualify Kaiser was denied.

2. *ANALYSIS*

Government Code Section 25203 reads in pertinent part: "The board shall direct and control the conduct of litigation in which the county, or any public entity of which the board is the governing body, is a party; by a two-thirds vote of all the members, the

19

board may employ counsel to assist the district attorney, county counsel, or other counsel for the county or entity in the conduct of such actions." Government Code section 54950 provides, "the Legislature finds and declares that the public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly."

Schwenn has failed to establish standing to file the motion to disqualify counsel. Standing is a legal question that can be addressed for the first time on appeal. (*Great Lakes Construction v. Burman* (2010) 186 Cal.App.4th 1347, 1354.)

"Standing generally requires that the plaintiff be able to allege injury, that is, an invasion of a legally protected interest. [Citation.] A 'standing' requirement is implicit in disqualification motions." (*Great Lakes Construction v. Burman*, *supra*, 186 Cal.App.4th at p. 1356) "Generally, before the disqualification of an attorney is proper, the complaining party must have or must have had an attorney-client relationship with that attorney." (*Ibid.*) "[A]bsent an attorney-client relationship, the moving party must have an expectation of confidentiality." (*Ibid.*) Accordingly, under California law, "a moving party must have standing, that is, an invasion of a legally cognizable interest, to disqualify any attorney." (*Id.* at p. 1357.)

Schwenn has failed to establish standing to bring the motion to disqualify Kaiser. Schwenn does not allege an invasion of a personal, legally-protected interest by Kaiser representing the County. She merely states that Kaiser was hired without a two-thirds vote of the Board. Schwenn had no personal stake in whether the County hired outside

20

counsel or used county counsel and no protected interest possessed by her was violated. Schwenn did not allege that Kaiser had some duty of confidentiality or loyalty to her. The motion to disqualify Kaiser was properly denied.

D. COLLATERAL ESTOPPEL AND EXIGENT CIRCUMSTANCES

Schwenn contends the trial court erred by finding that exigent circumstances were conclusively proven as to four dates that the officers went to the Property based on collateral estoppel. Schwenn has failed to show that such ruling was prejudicial.

1. *ADDITIONAL FACTUAL BACKGROUND*

Defendants' counsel argued after the presentation of Schwenn's case that collateral estoppel applied to the determination of exigent circumstances. The trial court had taken judicial notice of a Penal Code section 1538.5 motion to suppress evidence hearing held on January 21, 2016, in Schwenn's criminal case (Riverside County Superior Court case No. INF1301924). Defendants' counsel argued the suppression motion involved the same parties, the same dates, and both parties had an opportunity to be heard. The judge in the criminal case determined that starting in April 2013, exigent circumstances existed for entry onto the Property. This applied until Schwenn's arrest on July 25, 2013. The ruling was based on a dead dog and other suffering dogs being found on the Property. Defendants' counsel argued that collateral estoppel applied because the case was final.

Schwenn filed opposition and argued that collateral estoppel on the issue of exigent circumstances did not apply because the criminal case was not final.

The trial court addressed if there was collateral estoppel for the issue of exigent circumstances after the presentation of all of the evidence. The trial court found that the ruling by the criminal court only applied to four dates: June 14, 2013, June 29, 2013, June 30, 2013, and July 20, 2013. As to those dates only, the trial court found that collateral estoppel applied, and exigent circumstances existed for warrantless entry on the Property. The jury would be instructed on collateral estoppel.

The jury was instructed first that Schwenn was claiming she was deprived of her civil rights as the result of an official policy of the County. The jury was instructed that in order to establish the claim, Schwenn had to prove: "1. That the County of Riverside had an official policy allowing searches by animal control officers without a warrant; [¶] 2. That Luis Rosa, Gerald Duchene, James Huffman, Hector Palafox, Lisa Boughamer or Paul Villanueva was an employee of the County of Riverside; [¶] 3. That said specific individual [officer] unreasonably searched [Schwenn]'s property without a warrant; [¶] 4. That said specific individual [officer]'s conduct violated . . . Schwenn's right of privacy; [¶] 5. That said specific individual [officer] acted because of this official policy."

The jury was further instructed that in order to find that the officers carried out unreasonable searches of Schwenn's "home," she had to prove that the officers "searched" Schwenn's "home" without a warrant. Further, the jury must find that the officers were acting in the performance of their official duties, and that Schwenn was

22

harmed. The jury must further find that the actions of the officers were a substantial factor in the harm.

The jury was given a special instruction as follows: "As to the dates June 14, 2013, June 29, 2013, June 30, 2013, and July 20, 2013, it has been conclusively determined by the Court that any officers who may have searched [Schwenn]'s property on those dates conducted the search under exigent circumstances."

During their deliberations, the jury had a question: "What is the meaning of home? We aren't sure if it's the area under the tarps between the cars or does it encompass a larger area? If it encompasses a larger area, what are the parameters of that area?" The trial court discussed the matter with the parties, and noted that none of the jury instructions provided a definition. Schwenn and Defendants agreed that the jury could be instructed, "The area where the daily living activities occurred."

Section II of the verdict forms provided to the jury first asked the question whether each of the officers searched Schwenn's home without a warrant. The jury answered "No." The jury did not reach a subsequent question, "Did exigent circumstances exist for the search and was the search reasonable?"

2.     *ANALYSIS*

" 'Collateral estoppel is an equitable concept based on fundamental principles of fairness.' [Citation.] 'Issue preclusion prevents "relitigation of issues argued and decided in prior proceedings." [Citation.] The threshold requirements for issue preclusion are: (1) the issue is identical to that decided in the former proceeding, (2) the issue was actually litigated in the former proceeding, (3) the issue was necessarily

23

decided in the former proceeding, (4) the decision in the former proceeding is final and on the merits, and (5) preclusion is sought against a person who was a party or in privity with a party to the former proceeding.' " (*Murphy v. Murphy* (2008) 164 Cal.App.4th 376, 398-399.)

Schwenn has made no attempt to argue how this ruling was prejudicial to her case. Even if we were to consider that the trial court's ruling on collateral estoppel was erroneous, errors in civil trials require examination to determine " 'whether prejudice actually occurred in light of the entire record.' " (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801-802; see also *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580 ["No form of civil trial error justifies reversal and retrial, with its attendant expense and possible loss of witnesses, where in light of the entire record, there was no actual prejudice to the appealing party"].) Here, the trial court found that collateral estoppel applied to only four dates that officers entered the Property. There were numerous other dates and times that officers entered the Property for which the ruling on collateral estoppel did not apply, and Schwenn brought only one cause of action for violating her civil rights. Schwenn has made no attempt to argue how the ruling was prejudicial.

Schwenn would not be able to meet her burden of showing prejudice even if she argued prejudice. Based on the instructions and verdict entered by the jury, the jury did not consider the entry by officers onto the Property as constituting a search without a warrant. "The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in

24

clear and specific constitutional terms: 'The right of the people to be secure in their . . . houses . . . shall not be violated.' That language unequivocally establishes the proposition that '[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' [Citation.] In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance of the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." (*Payton v. New York* (1980) 445 U.S. 573, 589-590.)

It is clear from the verdict that the jury did not consider the actions of the officers as warrantless searches of her home; that they never crossed the "threshold" of her home; and the jury never reached the issue of exigent circumstances. (*Payton v. New York*, *supra*, 445 U.S. at p. 590.) As such, there can be no prejudice from the trial court's ruling on collateral estoppel as the jury never reached the issue of exigent circumstances.

Based on our conclusions, we need not address Schwenn's fourth argument that the "exigent circumstance doctrine is inapplicable to the 105 searches of [Schwenn]'s property by [Defendants]." As stated, the jury never reached the issue of exigent circumstances because they found that the officers did not conduct searches without a warrant. Schwenn does not contest this finding by the jury. As such, Schwenn's argument regarding exigent circumstances has no bearing on the verdict reached by the jury and is rejected.

## DISPOSITION

The judgment is affirmed in full.  Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

CODRINGTON
J.

MENETREZ
J.

26