Filed 6/4/14  PT Gaming v. Kang CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PT GAMING, LLC, et al., | B251841 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. YC068331) |
| v. | |
| CONNIE KANG et al., | ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT] |
| Defendants and Respondents. | |

THE COURT:

It is ordered that the unpublished opinion filed May 29, 2014, be modified as follows:

1.  At page 2, substitute the following for the second full paragraph:

In California non-Indian gambling establishments, a "third-party provider of proposition player services" (third-party provider) at each table collects winnings and

pays loses.  (Bus. & Prof. Code, § 19984.)  Agencies that employ these third-party providers must be owned and operated independently of casinos.  John Park and Patrick Tierney owned Network Management Group (NMG), a company specializing in providing third-party providers to such establishments.  During their partnership at NMG, St. Denis represented Park, Tierney and other entities.

    2.  At page 7, change the first word Appellants to Respondents.

    There is no change in the judgment.

---

*EPSTEIN, P. J.            MANELLA, J.            EDMON, J.**

**Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

2

Filed 5/29/14 (unmodified version)
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PT GAMING, LLC, et al., | B251841 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. YC068331) |
| v. | |
| CONNIE KANG et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stuart M. Rice, Judge.  Reversed.

Michael St. Denis Professional Corporation, Michael St. Denis; Law Office of Tracey Buck-Walsh, and Tracey Buck-Walsh, for Plaintiffs and Appellants.

Fox Rothschild, Jeffrey S. Kravitz, and Patrick J. Hagan, for Defendants and Respondents.

_____

The issue on this appeal is standing. PT Gaming, LLC (PTG) retained attorney Michael St. Denis to sue former employees Connie Kang, Daein Kang, and Marcus Sheely (respondents) for breach of contract. After leaving PTG for a rival agency, respondents allegedly violated their employment agreement with PTG that prohibited them from soliciting their former colleagues to leave the company. St. Denis had represented respondents' new employer, Certified Network M, Inc. (CNM) and its owner, John Park. The trial court granted respondents' motion to disqualify St. Denis due to a concurrent conflict of interest. PTG and Michael St. Denis Professional Corporation (appellants) contend respondents lacked standing to bring the motion. It is clear that, under the circumstances alleged, Park had standing to disqualify St. Denis, but he has not sought to do so. The issue in this case is whether respondents have standing. We conclude they do not and, on that basis, reverse the order of the trial court.

## FACTUAL AND PROCEDURAL SUMMARY

In California off-reservation casinos, a banker at each gaming table collects winnings and pays losses, all facilitated through a casino dealer. Agencies that employ these bankers must be owned and operated independently of casinos. John Park and Patrick Tierney owned Network Management Group (NMG), a company specializing in providing bankers to off-reservation casinos. During their partnership in NMG, St. Denis represented Park, Tierney, and their entities.

After Park purchased a casino in 2008, he incorporated CNM to provide proposition player services. Then Park closed NMG and purchased Tierney's interest. Park also sold NMG's banking contracts to Tierney, who formed PTG to continue providing services under those agreements. PTG hired most of NMG's bankers and other employees. CNM and PTG compete in Southern California, employing bankers who previously worked for NMG, Park, or his affiliates.

St. Denis continued to represent Park, Tierney, PTG, CNM, and Park's affiliates "in a variety of matters in which he provided business, litigation, and employment-related advice." He appeared as attorney of record in several actions on behalf of Park, CNM,

2

and Fortiss LLC, a company that provides counsel to Park and CNM. St. Denis also consulted with Fortiss LLC's general counsel, who acts as legal co-counsel to CNM and Park on employment issues. As of May 2013, St. Denis continued to represent Park and Fortiss LLC in various ongoing matters.

Between March 2010 and October 2011, PTG hired respondents to work as bankers in off-reservation casinos. Each signed a "Confidentiality and Fair Competition Agreement," which prohibited, for one year following the termination of their employment with PTG, direct or indirect solicitation, hiring, recruiting, or encouragement of any PTG employee to leave the company. Between November and December 2012, respondents resigned from PTG, and began working for CNM and Fortiss LLC. About that time, respondents allegedly contacted and encouraged PTG employees to quit PTG and work for competing companies.

In March 2013, PTG retained St. Denis, and filed two separate lawsuits against respondents: one against Daein Kang and Connie Kang, and a second against Marcus Sheely.[1] PTG's two complaints alleged respondents breached their agreements by soliciting PTG employees to leave the company and to transfer to competitors. PTG argued these alleged violations resulted in "severe disruption of [its] operations, including but not limited to the loss of employees due to [respondents'] illegal and improper recruiting . . . ." In their answer, respondents claimed the agreements were unenforceable, and even if enforceable, they were not breached.

In May 2013, respondents moved to disqualify St. Denis as PTG's counsel. This motion was supported by declarations from Park and their counsel. Respondents argued St. Denis's representation of PTG was directly adverse to Park, CNM, and other current clients; there was a substantial relationship between current and previous cases such that

---

[1]     In June 2013, the trial court consolidated *PT Gaming, LLC v. Marcus Sheely* (Case No. TC 027164) and *PT Gaming, LLC. v. Connie Kang, et al.* (Case No. YC 068331), which became the lead case.

3

the law presumed St. Denis acquired confidential information prejudicial to respondents; and St. Denis's representation of PTG required him to serve as both an advocate and a witness. They also argued that PTG would not suffer prejudice if St. Denis were disqualified. Respondents claimed they had standing to bring the motion because St. Denis's continued representation of PTG "would undermine the integrity of the judicial process," pursuant to the standard in *Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, 1205 (*Kennedy*). They argued St. Denis displayed disloyalty by suing his own client's employees. In the alternative, respondents asserted standing because they would be prejudiced by St. Denis's presumed knowledge of confidential information obtained in prior representations.

In June 2013, appellants filed their opposition, on four grounds. First, they argued there could be no concurrent or successive conflict of interest because St. Denis never represented respondents. Second, respondents' declarations and other evidence were inadmissible. Third, there was no evidence that St. Denis would serve as both an advocate and a witness. And, fourth, respondents' motion was tactically abusive and should have been raised earlier. Appellants moved to strike the declarations of Park and respondents' counsel because the declarations did not indicate they were based on personal knowledge, or sworn under the laws of the State of California.

Respondents filed a reply in support of their motion, and an opposition to appellants' motion to strike. They also submitted amended declarations from Park and respondents' counsel, adding the text, "I have personal knowledge of the facts set forth below," and declaring the statements therein were made under penalty of perjury under the laws of the "State of California."

In August 2013, the court granted respondents' motion to disqualify St. Denis. It denied appellants' request to strike the declarations of Park and respondents' counsel, and overruled their evidentiary objections. It wrote, "Because Mr. St. Denis's representation of [appellants] in the instant action is directly adverse to the interests of [respondents'] employer, John Park, who is a current client of Mr. St. Denis, the Court GRANTS the

4

Motion and disqualifies Mr. St. Denis as counsel for Plaintiff." Appellants filed timely notices of appeal.

## DISCUSSION

We review an order granting or denying a disqualification motion for abuse of discretion. (*Kennedy*, *supra*, 201 Cal.App.4th at p. 1203; *Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1354 (*Burman*).) "The trial court's ruling is presumed correct [citation] and reversal is permissible 'only when there is no reasonable basis for the trial court's decision' [citation]. We accept as correct all of the court's express or implied findings that are supported by substantial evidence." (*Kennedy*, *supra*, at p. 1203.)

Appellants argue respondents lacked standing to bring the motion to disqualify St. Denis because they had not been his clients. Apparently, "no California case has held that only a client or former client may bring a disqualification motion." (*Kennedy*, *supra*, 201 Cal.App.4th at p. 1204.) On motions to disqualify, "[s]tanding generally requires that the plaintiff be able to allege injury, that is, an invasion of a legally protected interest. [Citation.] . . . Generally, before the disqualification of an attorney is proper, the complaining party must have or must have had an attorney-client relationship with that attorney. [Citation.]" (*Burman*, *supra*, 186 Cal.App.4th at p. 1356 [finding standing requirement "implicit" in disqualification motions].)[2] When the moving party lacks an attorney-client relationship, "some sort of confidential or fiduciary relationship" may be sufficient. (*Dino v. Pelayo* (2006) 145 Cal.App.4th 347, 353 [in cases of actual or potential disclosure of confidential information].) Nonclients "must meet [these] stringent standing requirements" by demonstrating "harm arising from a legally

---

[2] Because St. Denis also represents Park, this standing requirement provides a basis for Park to disqualify St. Denis. (See also *Machado v. Superior Court* (2007) 148 Cal.App.4th 875, 881 ["an aggrieved nonparty who asserts that an attorney has undertaken adverse representation should file a collateral injunctive suit to end the conflicted representation"].) However, the record indicates that Park has not sought to do so.

5

cognizable interest which is concrete and particularized, not hypothetical." (*Burman*, *supra*, at p. 1358.)

One court has held that "'where the ethical breach is "'manifest and glaring'" and so "infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of [his or] her claims" [citation], a nonclient might meet the standing requirements to bring a motion to disqualify based upon a third party conflict of interest or other ethical violation.' [Citation.]" (*Kennedy*, *supra*, 201 Cal.App.4th at p. 1204 [affirming standing of mother to move to disqualify paternal grandfather attorney in paternity dispute between mother and father, even though mother was not attorney's client].)

Respondents cannot demonstrate a fiduciary relationship with St. Denis. PTG retained St. Denis to sue respondents for breach of the employment agreements with PTG. St. Denis also represents Park, owner of CNM, for which respondents work. But respondents made no showing that St. Denis represented respondents or established any kind of relationship with them. In fact, respondents admitted that they never had a formal relationship with St. Denis. Finally, respondents provided no relevant authority for their claim that St. Denis's representation of Park was a basis for a fiduciary duty to respondents.

Nor can respondents show that St. Denis's representation of appellants threatens the integrity of the judicial process or harms respondents' interests. St. Denis's representation of appellants, and his simultaneous and previous representation of respondents' current employer, does not impact respondents' ability to defend themselves in the underlying action. The fact that Park may have an indirect interest in the lawsuit against respondents does not mean that any harm to him necessarily flows to respondents. In addition, respondents' claims that St. Denis's interests escalate the stakes of the underlying litigation and exacerbate the tension between parties do not rise to the level of "a legally cognizable interest which is concrete and particularized, not hypothetical." (*Burman*, *supra*, 186 Cal.App.4th at p. 1358.)

6

Appellants cite two cases for the proposition that any indirect harm to Park "necessarily flows" to respondents. (*Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft* (1999) 69 Cal.App.4th 223, 240, 253 [unity of interests between parent and subsidiary corporations allows treatment as one entity under California conflict rules]; *Baxter Diagnostics Inc. v. AVL Scientific Corp.* (C.D.Cal. 1992) 798 F.Supp. 612, 616 [plaintiff company is "inextricably intertwined with its parent holding company" thus injury to the parent company from conflict of interest necessarily flows to plaintiff, despite lack of attorney-client relationship].) These cases held that the two corporate entities were sufficiently related to create a conflict that merited disqualification. Here, respondents are not corporate subsidiaries or parent holding companies. It does not follow that employees of an entity suffer harm specific to their employers, for purposes of conflict analysis.

Further, contrary to respondents' claim, St. Denis's conduct was not sufficiently "'"'manifest and glaring'"'" that "'"it impact[ed] the moving party's interest in a just and lawful determination of [his or] her claims"'" and undermined the integrity of the judicial process." (*Kennedy*, *supra*, 201 Cal.App.4th at pp. 1204, 1205.) *Kennedy* concerned a paternity dispute between a mother and a father. (*Id.* at pp. 1201-1202.) The reviewing court affirmed mother's standing to move to disqualify father's attorney, who was also the child's paternal grandfather. (*Id.* at p. 1205.) The court wrote: "It makes no sense for a court to stand idly by and permit conflicted counsel to participate in a case merely because neither a client nor former client has brought a motion." (*Id.* at pp. 1204-1205.) "'[T]he court has an *independent interest* in ensuring trials are conducted within ethical standards of the profession and that legal proceedings appear fair to all that observe them.'" (*Id.* at p. 1205.) The appellate court described how the "plethora of family entanglements, potential misuse of confidential information, a conflict posed by the near-certain prospect that counsel will have to testify" and concern for "the preservation of the integrity of the judicial system" supported the trial court's disqualification order. (*Id.* at pp. 1200, 1205-1213.)

7

*Kennedy* is distinguishable. In that case, the paternal grandfather attorney might "have acquired confidential facts about [mother] and her family's situation that could be used to [father's] advantage." (*Kennedy*, *supra*, 201 Cal.App.4th at p. 1205.) The court also identified "multiple and interconnected family entanglements [that] result[ed] in a strong appearance of impropriety and undermine[d] the integrity of the judicial system." (*Id.* at p. 1211.) For example, the attorney paternal grandfather was counsel for his son, who was litigating against his son's former girlfriend. (*Ibid.*) The paternal grandfather's law firm previously had represented the mother's father in a separate family law matter, during which he procured a declaration from the mother and employed the mother's stepmother. (*Ibid.*) In addition, he was grandfather to the child who was the subject of the controversy. (*Ibid.*) Also, the nature and quality of the mother's household was material to the ongoing dispute, as it would likely impact the court's paternity decision. (*Ibid.*) Finally, the paternal grandfather was likely to be called as a witness. (*Ibid.*)

The principal factors supporting the finding in *Kennedy* are absent here. St. Denis represents respondents' former employer in the suit against them, and their present employer in unrelated matters. Since St. Denis had no formal relationship with respondents, they cannot successfully claim that he obtained confidential information about them. In addition, St. Denis would not simultaneously serve as an advocate and a witness, as he submitted a declaration that he had "no personal knowledge . . . to testify in Court regarding the employment agreement" that respondents signed. Finally, the family entanglements central to *Kennedy* are not present here. For these reasons, the limited exception in *Kennedy* does not provide respondents with standing to disqualify St. Denis. Thus, the trial court abused its discretion in finding respondents had standing to bring the motion.

Respondents contend that regardless of standing, the trial court's order should be affirmed since appellants cannot show the prejudice required for reversal. (See Code Civ. Proc., § 475.) Appellants apparently claim the disqualification of St. Denis prejudiced their ability "to retain the best possible counsel . . . ." Respondents argue the

8

outcome would not have been different, since appellants have not identified an exception to the mandatory disqualification rule in concurrent conflict cases. In addition, they contend Park and his entities could file a collateral action to disqualify St. Denis. In short, respondents contend St. Denis would have been disqualified regardless of respondents' standing to bring their motion. However, St. Denis never represented respondents, so there is no concurrent conflict of interest. Nor is there evidence that Park or his entities have moved to disqualify St. Denis, or plan to do so. Accordingly, appellants have demonstrated prejudice sufficient to merit reversal.

Finally, respondents argue appellants did not dispute that St. Denis's simultaneous representation of PTG, Park, CNM, and Fortiss LLC created a conflict. As a result, respondents argue, appellants forfeited that point. However, appellants have limited their appeal to the question of respondents' standing to bring the motion to disqualify St. Denis. Accordingly, because we find respondents lacked standing to move to disqualify St. Denis, we do not decide whether the trial court correctly determined the merits of their motion.

## DISPOSITION

The order is reversed. Appellants are entitled to their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.


We concur:


MANELLA, J.                                        EDMON, J.*

_____
* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9