Filed 10/24/23  RWB Platinum Vape v. Sadler CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RWB PLATINUM VAPE, INC., A CALIFORNIA CORPORATION; AND RED WHTIE & BLOOM BRANDS, INC., A CANADIAN CORPORATION,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>GEORGE SADLER AND CODY SADLER,<br><br>Defendants and Appellants. | D080723<br><br><br><br>(Super. Ct. No. 37-2022-00013335-CU-BC-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Ronald F. Frazier, Judge.  Affirmed.

Austin Legal Group, APC, Tamara M. Rozmus, and Gina M. Austin, for Defendants and Appellants.

Kibler Fowler & Cave LLP, Matthew J. Cave, Kevin C. Kroll, and Shiqi W. Borjigin, for Plaintiffs and Respondents.

# I.  INTRODUCTION

In 2014, George and Cody Sadler (the Sadlers)[1] formed Vista Prime Management LLC and several other entities that collectively comprised a cannabis manufacturing brand named Platinum Vape.  They sold the business to RWB Platinum Vape (RWB) in 2020.  Gina Austin, the owner and managing attorney for Austin Legal Group APC (ALG), and ALG represented the Sadlers and the Platinum Vape entities in the sale.

RWB hired George as the Chief Executive Officer (CEO) of the newly acquired Platinum Vape entities (referred to as VPM after the sale).  ALG continued to represent George individually.  George also retained ALG to represent VPM.  In September 2021, VPM sued RWB, and RWB cross-complained.  ALG represented VPM and the Sadlers in that litigation.  The parties settled on October 1, 2021.

In April 2022, RWB sued the Sadlers for misrepresentation in connection with the September 2021 settlement, breach of the securities purchase agreement, and violations of noncompetition provisions.  RWB moved to disqualify ALG from representing the Sadlers.  The court granted RWB's motion.

On appeal the Sadlers contend that RWB lacks standing to request ALG's disqualification because ALG never acquired confidential information about RWB.  They also contend that ALG did not successively represent the Sadlers, VPM, and RWB, so they cannot be disqualified on that basis.  Further, they maintain that ALG does not have information about RWB

---

[1]     Because the Sadlers share a surname, we will refer to them by first names when we refer to them individually.  No disrespect is intended.  (See *In Re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475, fn. 1.)

material to the present dispute.  The Sadlers argue, therefore, the court erred by disqualifying ALG.

We conclude RWB has standing.  We also hold substantial evidence supports the trial court's conclusion that RWB and VPM share a unity of interests and are closely enough related to treat them as a single entity for purposes of a conflicts analysis.  We further find the previous litigation and the present dispute are substantially related.  Accordingly, the trial court did not abuse its discretion in disqualifying ALG, and we affirm.[2]

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The Sadlers organized Vista Prime Management, LLC in California in 2014.  They also formed several other entities that, along with Vista Prime, comprised a cannabis manufacturing brand named Platinum Vape.

George retained ALG to represent him individually and to represent the Platinum Vape entities.  ALG provided the Platinum Vape entities with general legal advice about cannabis law and regulation compliance.

In 2020, Brad Rogers, on behalf of Red White and Bloom Brands, Inc., a publicly traded Canadian company, approached George to purchase the Platinum Vape brand.  Red White and Bloom formed RWB Platinum Vape, a wholly owned American subsidiary, to purchase the Platinum Vape entities.

ALG represented the Sadlers and the Platinum Vape entities in the transaction.

The parties executed sales documents, including a securities purchase agreement (SPA), a restrictive covenant agreement, and employment

---

[2]    In their opening brief, the Sadlers also argue that ALG did not concurrently represent the Sadlers and VPM.  Because we affirm the disqualification based on successive representation, we do not address this contention.

agreements with George and Cody. The SPA required the Sadlers to deliver to RWB all items, equipment, and records required to operate the companies. It gave RWB full access to the premises, properties, personnel, books, records, contracts, and documents pertaining to VPM.

The SPA also required RWB to enter employment agreements with Cody and George that would pay them annual salaries, stock bonuses, incentives, and vacation pay in accordance with RWB's policies. Further, the Sadlers each entered into restrictive covenant agreements with RWB that included non-competition provisions.

In his employment agreement with RWB, George agreed to serve as the CEO, director, and manager of all Platinum Vape entities. George was eligible to participate in stock incentive plans and programs that RWB established. Earnings were tied to RWB's fiscal years. The deal closed on September 11, 2020.

ALG then entered a new engagement agreement with VPM to provide general counsel services, including "corporate, land use, litigation, and cannabis." George signed the engagement letter for VPM.

For the rest of 2020 and during 2021, George managed VPM. He directed ALG's provision of general legal and cannabis law compliance services. ALG communicated directly with RWB about VPM's integration with RWB.

In September 2021, a dispute arose between the Sadlers and RWB resulting in several lawsuits. ALG filed one of those suits against RWB and Rogers on behalf of VPM.

VPM alleged that RWB interfered with VPM by attempting to steal assets and interfere with contracts and customers. VPM also alleged that

4

RWB attempted to access programs, accounts, and point of sale software stored on the computers.

RWB filed a verified cross-complaint. RWB alleged that after it purchased VPM, RWB discovered financial irregularities. The cross-complaint contended that the Sadlers engaged in embezzlement, fraud, and violations of their non-competition obligations. It explained that the Sadlers were asserting that they were the owners of VPM. The cross-complaint also stated the Sadlers breached the SPA.

Responding to the Sadlers' actions, RWB implemented a policy that required their head office to approve all expenses over $5,000. RWB also prohibited the Sadlers from continuing as signatories on the businesses' bank accounts and implemented a two-tiered signing system for spending.

In this dispute ALG represented the Sadlers and VPM in settlement negotiations. ALG communicated directly with several RWB employees and officers. In defending VPM, ALG reviewed agreements and enjoyed access to the VPM agreements, and to confidential, proprietary information.

The parties agreed to a settlement around September 18, 2021, with the matter finally resolving on October 1, 2021. On October 4, 2021, ALG sent a letter ending its VPM representation. RWB terminated George's employment, and Rogers took over as the CEO of VPM.

In April 2022, RWB filed the instant action,[3] alleging that the Sadlers made intentional misrepresentations and concealments to induce settlement in the previous litigation. The verified complaint also alleges that the Sadlers failed to satisfy the conditions precedent contemplated by the settlement agreement. It further claims the Sadlers breached the SPA, the

---

[3] The suit named several other defendant entities: GC Global, LLC; C.S. Designs, Inc., Urban Therapies Manufacturing LLC, and Urban Therapies Distribution LLC.

restrictive covenant agreements, and the settlement agreement. Ms. Austin and ALG appeared as attorneys of record on the Sadlers' behalf.

RWB moved to disqualify them from representing the Sadlers in the litigation. The Sadlers opposed the motion.

The court disqualified ALG. In its statement of decision, the court noted that ALG previously represented the Sadlers and VPM. It found that RWB and VPM are " 'closely enough' " related to confer standing to RWB to seek disqualification of ALG. The court also found "that RWB and VPM, LLC, were 'closely enough related to be treated as one entity for purposes of the conflict herein.' " The court determined that the September 2021 litigation subject matter and the current dispute are substantially related. Further, it concluded that the nature of ALG's employment meant confidential material would normally be imparted. The trial court concluded that ALG's disqualification was mandatory.

## III. DISCUSSION

### A. *Standing.*

"[A] moving party must have standing, that is, an invasion of a legally cognizable interest, to disqualify an attorney." (*Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1357.) Standing is a legal question, which we may determine independent of the trial court's ruling. (*Id.* at p. 1354.) Although the complaining party generally "must have or must have had an attorney-client relationship with the attorney" it seeks to disqualify (*Id.* at p. 1356), "no California case has held that only a client or former client may bring a disqualification motion." (*Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, 1204.)

At least arguably, a legally cognizable interest for disqualifying an opposing attorney may arise from generalized policy concerns surrounding the rule, e.g., the integrity of the process. (*Lyle v. Superior Court* (1981) 122 Cal.App.3d 470, 482-483 [addressing an attorney-witness situation].) Even if generalized policy concerns were not an acceptable way to confer standing, if an attorney's relationship with a corporate family gives the attorney "a significant practical advantage in a case against an affiliate, then the attorney can be disqualified from taking the case." (*Morrison Knudsen Corp. v. Hancock, et al.* (1999) 69 Cal.App.4th 223, 253 (*Morrison*).) As we explain *post*, in our view ALG's prior relationship with VPM gives the Sadlers a practical advantage in this litigation against RWB. Therefore, even though RWB itself never retained ALG, we agree with the trial court that RWB and VPM "are 'closely enough' related for purposes of this litigation to confer standing to RWB to bring the motion to disqualify ALG[.]"

### B. Disqualification.

"[D]isqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145 (*SpeeDee Oil*).) However, "[t]he paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." (*Ibid.*)

We review an attorney's disqualification for an abuse of discretion (*SpeeDee Oil, supra,* 20 Cal.4th at p. 1143; *Jessen v. Hartford Casualty Ins. Co.* (2003) 111 Cal.App.4th 698, 705) and "accept[ ] as correct all of [the court's] express or implied findings supported by substantial evidence." (*City National Bank v. Adams* (2002) 96 Cal.App.4th 315, 322 (*City National*

7

*Bank*).).)  We presume the trial court's order is correct, and we indulge all presumptions to support the order, resolving conflicts in favor of the prevailing party and the trial court's resolution of any factual disputes.  (*In re Marriage of Zimmerman* (1993) 16 Cal.App.4th 556, 561-562.)  "We will reverse the trial court's ruling only where there is no reasonable basis for its action."  (*City National Bank*, at p. 323.)

### 1. *Successive Representation.*

Disqualification motions typically arise in two factual circumstances:  "(1) in cases of successive representation, where an attorney seeks to represent a client with interests that are potentially adverse to a former client of the attorney; and (2) in cases of simultaneous representation, where an attorney seeks to represent in a single action multiple parties with potentially adverse interests."  (*In re Charlisse C.* (2008) 45 Cal.4th 145, 159.)  "In simultaneous representation cases, '[t]he primary value at stake . . . is the attorney's duty—and the client's legitimate expectation—of *loyalty*, rather than confidentiality.' "  (*Id.* at p. 160, quoting *Flatt v. Superior* Court (1994) 9 Cal.4th 275, 284 (*Flatt*).)  In successive representation cases, the concern is an attorney's duty of confidentiality.  (*Western Sugar Coop v. Archer-Daniels-Midland Co.* (C.D.Cal. 2015) 98 F.Supp.3d 1074, 1080 [applying the California State Bar Act and the California Rules of Professional Conduct].)

The Sadlers contend the trial court incorrectly concluded that ALG previously represented RWB, making a successive representation analysis an abuse of discretion.  RWB contends that ALG's prior representation of VPM qualifies for a conflicts analysis because VPM and RWB share a unity of interests.

8

*Morrison* is instructive. There, the court prevented a law firm (Hancock) from representing a water district in any dispute with Morrison Knudsen Corporation (Morrison), or Morrison's wholly owned subsidiary, Centennial Engineering (Centennial), even though Hancock had never represented Centennial. (*Morrison, supra,* 69 Cal.App.4th at pp. 227, 238.) Morrison's primary comprehensive insurance policy underwriters hired Hancock to monitor the defense attorneys that Morrison retained on errors and omission claims, though Hancock never oversaw claims against Centennial. (*Id.* at pp. 227, 238.) Still, when the water district sued Centennial, the court concluded that based on a "unity of interest" analysis Morrison and Centennial should be treated as a single entity under California conflict of interest rules. (*Id.* at pp. 238, 240-247, 252.)

The appellate court affirmed the trial court's reasoning. It identified several factors to consider when determining if corporate entities could be considered a single unit for evaluating representational conflicts: (1) whether the two entities overlap in areas like operations and management personnel; (2) whether the attorney previously received confidential information from one entity that is substantially related to the claim currently against the other entity; and (3) whether there is overlapping control of the legal affairs of the two entities. (*Morrison, supra,* 69 Cal.App.4th at pp. 245-248.) The court also identified as a relevant factor whether affiliates might be joined in a lawsuit. (*Id.* at p. 247.)

Here, the trial court concluded—RWB and VPM were " 'closely enough related to be treated as one entity for purposes of the conflict herein.' " (See *Morrison, supra,* 69 Cal.App.4th at pp. 247-248.) We examine the record to determine whether substantial evidence supports this conclusion. (*SpeeDee Oil, supra,* 20 Cal.4th at p. 1143.)

9

The SPA gave RWB full control over VPM's operations. It stated that RWB would have all items and equipment required to operate the companies. It provided for RWB to possess keys to the properties and full access to the premises, properties, personnel, books records, contracts, and documents that pertained to VPM.

Although George ran the day-to-day operations of VPM, he did so only because RWB provided him with that authority through the employment agreement. RWB retained sole discretion to address George's compensation and any stock incentive plans. And George's earnings were tied to RWB's fiscal year.

Not only did the SPA give RWB full control over VPM's operations, but RWB expected to be heavily involved in VPM's activities. Attorney billing invoices show that ALG communicated with RWB in March 2021 about VPM's integration with RWB. RWB's verified cross-complaint from the September 2021 lawsuit explains that after RWB became concerned about VPM's finances, RWB required its approval for VPM spending over $5,000. RWB also instituted a policy requiring two-tiered signing authority for business bank accounts. These actions and details demonstrate operational overlap and integration.

Allegations in VPM's September 2021 verified cross-complaint against the Sadlers similarly reflect that it was the parties' intent that VPM would be fully integrated into RWB. The September 2021 cross-complaint alleges the Sadlers were in violation of their agreements because they were preventing RWB from accessing VPM's physical facilities, bank accounts, QuickBooks records, databases, and accounts receivable and payable, among other things. Thus, RWB intended to have access to and control over VPM.

The Sadlers maintain that ALG never obtained any of RWB's confidential information because RWB was represented in the previous dispute by attorneys other than ALG. This reasoning ignores ALG's exposure to VPM's legal issues and business practices. ALG provided general legal business services and cannabis law compliance services to VPM until October 1, 2021. It also represented VPM in the previous lawsuit, negotiating the settlement agreement on behalf of VPM. That lawsuit addressed whether there were financial irregularities in how the Sadlers managed VPM. The parties disputed control over assets, access to programs and accounts, and relationships with customers. As VPM's attorney, ALG was privy to confidential information about how the Sadlers ran VPM, the contracts VPM negotiated and entered, control over VPM's facilities, and VPM's financial management.

The current dispute alleges the Sadlers fraudulently induced the settlement by misrepresenting and concealing information about VPM, including information about its finances. Moreover, the verified complaint alleges that the Sadlers made intentional misrepresentations to induce settlement. RWB also alleges the Sadlers stole or destroyed some of VPM's confidential records to prevent RWB from uncovering financial and operating irregularities. ALG's knowledge about what the Sadlers told RWB and how that matched VPM's business documentation, or the existence of such documentation at all, is relevant to this dispute. Given ALG's previous access to VPM's agreements and legal business, as well as its direct representation of both the Sadlers and VPM in the dispute giving rise to this litigation, the court's factual conclusion that ALG had access to relevant, confidential information is not unreasonable.

11

The trial court did not expressly address in its order two factors mentioned in *Morrison*: whether there is overlapping control of the legal affairs of the RWB and VPM and whether affiliates might be joined in a lawsuit. (*Morrison, supra,* 69 Cal.App.4th at p. 247.) Neither of these factors tips the scales against finding a unity of interests. Although the Sadlers managed the day-to-day legal affairs of VPM during the previous litigation, RWB appears to do so now because Rogers, who is the CEO and Chairman of the Board of Directors of RWB, is the current CEO of VPM. Further, when the court asked the Sadlers' counsel at the disqualification hearing whether VPM could be joined, the attorney did not dispute that possibility.

### 2. *Substantially Related Matters.*

The Sadlers next contend that ALG's prior representation of VPM pertained only to VPM's general business practices. The Sadlers further contend that ALG did not represent RWB and so has no confidential information specific to RWB that is substantially related to the current litigation. The Sadlers argue that RWB fails to identify any category of information that ALG gained through its contacts with RWB, noting that ALG did not assist RWB with the transaction documents, the settlement agreement, or otherwise represent RWB in the previous dispute. However, because we treat RWB and VPM as the same entity for purposes of a conflict analysis, we consider ALG's previous representation of VPM in reaching our conclusion.

"To determine whether there is a substantial relationship between successive representations, a court must first determine whether the attorney had a direct professional relationship with the former client in which the attorney personally provided legal advice and services on a legal issue that is

12

closely related to the legal issue in the present representation." (*City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 847 (*Cobra Solutions*).) If the former representation involved a direct personal relationship because the attorney personally provided legal advice and services on an issue closely related to the issue in the present litigation, the attorney is presumed to possess confidential information. (*Ibid.*) If the attorney's contact with the prior client was not direct, the court examines the attorney's relationship to the prior client and considers the relationship between the prior and current representations. (*Ibid.*) If the subject of the previous representation " 'make[s] it likely the attorney acquired confidential information' that is relevant and material to the present representation, then the two representations are substantially related. [Citations.]" (*Ibid.*) "When a substantial relationship between the two representations is established, the attorney is automatically disqualified from representing the second client." (*Cobra Solutions*, at p. 847, citing *Flatt, supra,* 9 Cal.4th at p. 283.)

From September 11, 2021, until October 1, 2021, ALG provided general legal business services and cannabis compliance services for VPM. ALG also represented VPM in the lawsuit it filed against RWB, and it defended VPM against RWB's cross-complaint. Although VPM's complaint regarded control over access to programs, accounts, and point of sale software, the cross-complaint regarded VPM's contracts and clients, as well as whether VPM had financial irregularities and whether the Sadlers engaged in embezzlement, fraud, and violations of their non-competition obligations while managing VPM.

The current dispute questions whether the Sadlers acted fraudulently to induce the settlement agreement, as well as whether they violated its

13

terms. Like the previous cross-complaint, the complaint here also alleges that the Sadlers violated their non-competition obligations and breached the SPA. Accordingly, in its representation of VPM in the previous litigation, ALG "personally provided legal advice and services on a legal issue that is closely related to the legal issue in the present representation." (*Cobra Solutions, supra,* 38 Cal.4th at p. 847.) Further, the trial court did not err in presuming ALG possessed confidential information because there is a substantial relationship between the subject of the prior and the current representations. Accordingly, "access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is presumed and disqualification of the attorney's representation of the second client is mandatory; indeed, the disqualification extends vicariously to the entire firm. [Citations.]" (*Flatt, supra,* 9 Cal.4th at p. 283.) Thus, it was not an abuse of discretion to disqualify ALG.

## IV.  DISPOSITION

The judgment is affirmed.  Appellants to bear costs on appeal.


                                                            RUBIN, J.

WE CONCUR:



BUCHANAN, Acting P. J.



CASTILLO, J.

15